Submitted on record and briefs November 2, 2000; resubmitted en banc
November 15, 2001, affirmed January 30, 2002

In the Matter of the Marriage of

Robert W. JACOBS,
*Appellant,*

*and*

Theresa M. JACOBS,
*Respondent.*

DO 98-0480; A107959

39 P3d 251

Paula Johnson Lawrence and Lawrence & Houser, P.C., filed the brief for appellant.

Robert M. Johnstone, P.C., filed the brief for respondent.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer and Schuman, Judges.

EDMONDS, J.

Armstrong, J., concurring in part and dissenting in part.

## EDMONDS, J.

Husband appeals from a judgment dissolving the parties' 22-year marriage. ORS 107.105. He makes two assignments of error. First, he argues that the trial court erred when it held that wife rebutted the statutory presumption of equal contribution under ORS 107.105(1)(f) (1997) and declined to award him an equal share of the assets held in wife's name. Additionally, husband argues that the trial court erred when it held that he was not entitled to spousal support. We review *de novo* and affirm.

At the time of trial, wife was 51 years old, and husband was 61 years old. The parties spent most of their married life in Florida. In 1996, wife moved to McMinnville. Although husband initially stated his intention to relocate to Oregon, he continued to divide his time between the two states after 1996, spending the majority of it in Florida. Before the marriage, the parties agreed to keep their finances separate, and their conduct throughout the marriage reflects that agreement. When wife would occasionally ask for money during the marriage, husband would remind her that it was her responsibility to pay expenses according to their agreement. During their married life, wife worked as a nurse, a nursing shift supervisor, and finally, as a chief nursing officer. Husband has installed carpet and tile for 35 years and has operated his own business in that regard or acted as a supervisor of carpet installations for others. He never informed wife of the amounts of money that he made from his work. Wife held her checking, savings and retirement accounts in her name alone. At the time of trial, husband apparently had no bank accounts in his name, nor was he a signatory on any of wife's accounts. In previous years, he had his business checking accounts in his name only. The parties always filed separate income tax returns.

During the marriage, wife acquired a Bachelor of Science degree in nursing, a Master of Science degree in nursing, and a Master of Business Administration degree. She acquired that education without financial assistance or any other contributions from husband. She also worked full time while enrolled in those educational programs. Neither

party assumed significant homemaking responsibilities during the marriage. They generally ate out rather than cooked at home. When they ate out together, they took turns paying the bill. Each party did his or her own laundry. Wife generally paid for their household expenses, including rent, mortgages, and utilities, and she hired a housekeeper to maintain their residences, whom she paid from her own earnings. When husband made home improvements, wife paid husband for those efforts.

During the marriage, wife purchased a residence in Florida, in her name only, from her own earnings. Later, she sold it and used the proceeds to purchase a residence, in her name only, in McMinnville. Husband did not join wife in either purchase. In the past, husband expressed to wife his distaste for the responsibilities of home ownership and instructed her that, if she bought real property, he wanted nothing to do with it.[1] In addition, wife and husband owned and insured their vehicles separately throughout their marriage. Husband owned several boats during the marriage, which he held in his name only, or with individuals other than wife. At the time of the dissolution, wife owned two cars, one of which she had loaned to husband. He took that car to Florida without her permission. Husband claimed at trial to own no vehicles and to have no significant assets, although in the years leading up to the trial, he had informed wife of purchases of motor homes and trucks. We are not persuaded from this record that husband was candid with the trial court regarding the ownership of assets.

As to earning ability, husband claimed at trial to be unemployed. He testified that he could earn between $7 and $8 per hour supervising carpet installations. Wife testified that he worked steadily throughout their marriage. Wife earned about $99,000 a year, although she testified that she was planning to take a less demanding position within a few years. Husband, who is a Canadian citizen, will be eligible for a Canadian pension and social security after reaching 65

---

[1] Although husband now contends that he did not want to have record ownership of any real property because of his problems with the Internal Revenue Service and that, for that reason, he and wife agreed to hold assets under her name only, we adopt the trial court's credibility findings that discount his explanation.

years of age. The combined amount of those benefits appears to be between $300 and $350 per month. Wife has acquired multiple retirement accounts from her own earnings throughout the years that will provide her with a comfortable income upon her retirement. It appears that each party has supported himself or herself throughout the marriage with individual earnings, with the exception of housing expenses and gifts to husband from wife and others. Additionally, wife made a loan to husband in the 1980s to pay his debt to the Internal Revenue Service. Although husband has repaid part of the loan, the balance remained owing at the time of trial. In their last year of cohabitation, wife gave husband a gift of $10,000, so that he could begin retirement planning, and $150 in spending money on at least one occasion.

The trial court concluded that wife had rebutted the presumption of equal contribution under ORS 107.105(1)(f) (1997) and that the assets should be divided according to each party's contribution. Accordingly, it awarded all of the assets in wife's name to wife, and any assets in husband's name to husband.[2] Essentially, that meant that husband did not receive any of the assets that were identified at trial as marital assets. Additionally, it entered a money judgment in wife's favor to compensate her for jewelry and antique furniture that husband had pawned without her permission. It also rejected husband's claim for spousal support.

On appeal, husband argues:

"Insofar as this dissolution involved a long term 22-year marriage that was not a sham, and insofar as husband and wife lived together in the same residences and enjoyed intimacy and contributed financially to the household—each according to their means—as well as made major decisions together concerning such things as moving and purchasing a home, the trial court erred when it found that the presumption of equitable contribution was rebutted by the wife in this case—and then erred again when the trial court effectively went on to award 100 percent of the marital assets to wife.

_____

[2] The trial court awarded husband "all assets that are in his name, including any interest, present or future, that he has in his mother's trust, which he makes exclusive of claim or interest of [wife]." It is unclear from this record whether husband has a trust interest, and whether a trust exists plays no role in our decision.

"In addition, given that (1) husband is 61 years old, (2) the long length of the 22[-year] marriage during which husband's financial needs were met by the wife without her ever requesting contribution from husband, (3) husband can no longer perform the labor intensive job of carpet laying he is trained for, (4) the significant difference between the parties' earning capacities both in the past and in the present, and (5) in no way is husband able to support himself without spousal support at a level that would even come close to the standard of living enjoyed during the marriage, husband is entitled to spousal support."

As pertinent here, ORS 107.105(1)(f) (1997) provided:

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of coownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. In arriving at a just and proper division of property, the court shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties. The present value of, and income resulting from, the future enhanced earning capacity of either party may be considered as property. The presumption of equal contribution to the acquisition of marital property, however, shall not apply to enhanced earning capacity. A spouse asserting an interest in the income resulting

from an enhancement of earning capacity of the other spouse must demonstrate that the spouse made a material contribution to the enhancement. Material contribution can be shown by, among other things, having contributed, financially or otherwise, to the education and training that resulted in the enhanced earning capacity. The contribution shall have been substantial and of prolonged duration."

In *Massee and Massee*, 328 Or 195, 205, 970 P2d 1203 (1999), the Supreme Court said:

"In deciding whether the presumption of equal contribution is rebutted, the court first must determine the magnitude of each spouse's overall contribution to the acquisition of marital assets from evidence in the record. If one spouse is a homemaker, that determination necessarily will include an assessment of the homemaker spouse's contribution to the enterprise of homemaking. A homemaker spouse's overall contribution may consist of a combination of domestic contributions and economic or other nondomestic contributions.

"Once the court has determined each spouse's overall contribution to the acquisition of marital assets, the court compares the respective contributions of the spouses. The ultimate question is whether the spouse seeking to rebut the presumption of equal contribution has proved, by a preponderance of the evidence, that the other spouse did not contribute equally to the acquisition of marital assets. If the court determines that the presumption of equal contribution is rebutted, the presumption drops from the case and the court divides the property according to the magnitude of each spouse's contribution to the acquisition of marital assets. In other words, the court distributes the marital assets without regard to any presumption, but in a manner that is just and proper in all the circumstances, including the proven contributions of the parties to the acquisition of marital assets."

We agree with the trial court that wife has rebutted the presumption of equal contribution under ORS 107.105(1)(f) (1997) by a preponderance of the evidence. Neither spouse functioned as a homemaker. Moreover, the parties kept the assets acquired during the marriage in their separate names, depending on who purchased them. With

the exception of wife's payment of the parties' housing, utilities, and housekeeping expenses, neither party contributed his or her earnings during the marriage to the marital estate. Wife used her own income to acquire two residences, and she alone paid their mortgages. When husband made contributions to those assets, she paid him for his efforts. Because the evidence shows that husband did not contribute to the acquisition or maintenance of any of the marital assets identified at trial either directly or indirectly, and because the parties did not commingle their assets in any significant way, we agree that it is just and proper to award the assets as the trial court did. For nearly three decades, the parties ordered their lives around their decision to keep their properties and earnings separate. We see no reason to disturb that arrangement because their relationship has ended.

■■ We turn to the issue of spousal support. ORS 107.105(1)(d) (1997) provided:

> "(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree:

> "* * * * *

> "(d) For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:

> "(A) The length of the marriage;

> "(B) The age and the physical and mental health of the parties;

> "(C) The contribution by one spouse to the education, training and earning power of the other spouse;

> "(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

> "(E) The need for education, training or retraining to enable a party to become employable at suitable work or to

enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F)  The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills. In a case of a party's extended absence from the job market to perform the role of homemaker, where it is likely that the party will never substantially recover from the loss of economic position due to the extended absence, and where the other party has, during the marriage, achieved a substantially advantageous economic position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable;

"(G)  The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"(H)  The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits, and the decree shall state the court's findings relating to net spendable income of each party if such statement is requested by either party;

"(I)  The amount of long-term financial obligation, including legal fees and costs;

"(J)  Costs of health care to a party;

"(K)  The standard of living established during the marriage;

"(L)  Premiums paid or to be paid for life insurance under ORS 107.810 to 107.830 on the life of a party ordered to pay support; and

"(M)  Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

In *Smith and Smith*, 168 Or App 349, 353-54, 7 P3d 559 (2000), we explained:

"ORS 107.105(1)(d) (1997) authorized the trial court to award spousal support in an amount and for a duration that is 'just and equitable.' In deciding whether, how much, and for how long spousal support should be ordered, the courts do not attempt merely to eliminate any disparities in the parties' incomes or to enable one spouse to look to the other indefinitely for support. *Wolhaupter-Heinzel and Heinzel*, 108 Or App 514, 521, 816 P2d 672, *rev den* 312 Or 526 (1991). The primary purpose of spousal support is to provide a not-overly disproportionate standard of living to that achieved during the marriage when the supported spouse cannot do so on his or her own. *See Hayner and Hayner*, 58 Or App 324, 328, 648 P2d 379, *rev den* 293 Or 635 (1982). In assessing the need for spousal support, the court must consider the other financial provisions of the judgment, and none can be considered in isolation. [*Grove and Grove*, 280 Or 341, 344, 571 P2d 477 (1971)]." (Footnote omitted.)

The legislature has promulgated general guidelines for the award of spousal support. Although it is necessary to consider each case on its own facts, the Supreme Court has developed general principles consistent with those provided by the legislature, so that similar cases will be treated similarly. *Grove*, 280 Or at 353. The factors developed by the court and the promulgated by legislature include the goal of economic self-sufficiency. Thus, "economic self-sufficiency of each spouse is to be the objective of a spousal support order pursuant to the statute. * * * [A] spousal support order must recognize the effects of the marriage upon the capability of spouse for economic self-sufficiency." *Lemke and Lemke,* 289 Or 145, 149, 611 P2d 295 (1980). It follows that, when there is no legislatively approved purpose to be served by ordering spousal support, none should be ordered.

We now turn to an analysis of all of the statutory factors in light of their objectives. We note first that husband's lack of credibility bears on his claim. For instance, the evidence does not support his contention that he can no longer perform carpet laying work because of his health. In fact, both parties appear to be in reasonably good health. Second, it is apparent that husband's earning ability remains the same now as it existed before and during the marriage. Husband has worked steadily throughout the marriage, and there is no persuasive evidence that he needs contributions from wife's earnings to support himself. Rather, he has paid for his own living expenses out of his own earnings and has deliberately eschewed the responsibility of home ownership.

■     In this 22-year marriage, the parties have kept their finances separate. Each has been employed during the marriage, and husband leaves the marriage with the same work skills and relative earning capacity that he enjoyed before and during it. Husband has supported himself during the marriage with his own earnings and purchased significant assets with those earnings for his own personal use. He has not contributed any of his earnings to the purchase of joint assets or to joint expenses. Moreover, there is no evidence that he has suffered a diminishment in his earning ability because of the marriage, nor is there credible evidence that his health does not permit him to presently earn what he has earned in the past. Consequently, because husband can achieve a standard of living not overly disproportionate to that enjoyed during the marriage, we conclude that it is not just and proper to award spousal support on those facts.

The dissent would award husband spousal support to compensate for the fact that wife will not be furnishing the costs of his housing after the dissolution, even though he is able to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage based on his own efforts. The dissent asserts that our decision restricts husband to a much lower standard of living than he enjoyed during the marriage. We reject that argument because the evidence does not support it. For 35 years, husband has been steadily employed and has been able to support himself in the manner that he has desired. He will continue to enjoy that same earning ability after the dissolution. The mere fact that wife has

paid the rental and mortgage expenses, the utility bills, and the property taxes on the dwellings in which they lived during the marriage and that she makes more money does not lead to the conclusion that she should be required to pay indefinite spousal support. Although husband points to the standard of living established during the marriage, that was a standard of living established solely because of wife's efforts and in the absence of any contribution by him. Having agreed to keep his earnings separate, and having refused to participate in the purchase or upkeep of real properties, it is not just and proper that he continue to enjoy those same benefits after the marriage is dissolved. Consequently, we agree with the trial court that spousal support is not warranted.

Affirmed.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

The majority affirms a dissolution judgment that awarded virtually all of the parties' marital assets to wife and no spousal support to husband. I agree with the majority's decision to affirm the trial court's property award. I disagree, however, with its decision to reject an award of spousal support to husband.

Although the majority claims to apply the factors that ORS 107.105(1)(d) (1997) requires us to consider in deciding whether to award spousal support, I believe that it effectively ignores two of those factors, subsections (1)(d)(K) and (M). The former requires us to consider "[t]he standard of living established during the marriage," and the latter requires us to consider

"[s]uch other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

The majority rejects as a factor in its consideration the standard of living that husband enjoyed during the marriage on the ground that

"that was a standard of living established solely because of wife's efforts and in the absence of any contribution by him." 179 Or App at 157.

That treatment of husband's standard of living is factually and legally untenable.

It is factually untenable because wife's contributions to the parties' joint living expenses made it possible for husband to use *his* income to enjoy the lifestyle that he did. In other words, husband's standard of living was the product of both his *and* wife's income, not, as the majority would have it, just wife's income.

The majority's treatment of husband's standard of living is legally untenable because it removes from our consideration wife's contributions to that standard of living. ORS 107.105(1)(d)(K) and (M) (1997) do not work that way. Subsections (1)(d)(K) and (M) direct us to consider the standard of living established or enjoyed during the marriage *irrespective* of whose contributions made the standard of living possible. It does not matter whether one spouse made a disproportionate contribution to the parties' standard of living. We are to consider the standard of living that the parties, *in fact*, enjoyed during the marriage and to make a support award that gives each party

"the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible." ORS 107.105(1)(d)(M) (1997).

Here, husband was 61 years old when the court dissolved the marriage, and there is no dispute that his earning potential is fixed at an income that is just above minimum wage. He also will receive retirement income at age 65 of between $300 and $350 per month. There simply is no way that the resources available to husband through his own efforts will enable him to enjoy a standard of living that begins to approach the standard of living that he enjoyed during the parties' 22-year marriage and 26-year relationship.

In contrast, wife was 51 years old at the dissolution of the marriage. She was employed at a job that paid her $99,000 a year, and she left the marriage with substantial

assets and retirement benefits. There is no dispute that she can readily afford to pay spousal support to husband without affecting her ability to enjoy a standard of living equivalent to the one that she enjoyed during the marriage. Under those circumstances, I believe that a just and equitable result requires us to award husband at least $400 a month in spousal support in order to enable him to enjoy a standard of living that is not overly disproportionate to the one that he enjoyed during the parties' marriage.[1] I respectfully dissent from the majority's decision to reject such an award.

Wollheim, Brewer, and Schuman, JJ., join in this dissent.

---

[1] Although the majority would dispute it, I believe that its analysis has implications beyond this case. Assume that a husband lives an affluent and self-indulgent lifestyle that is made possible through the sole efforts of his wife. After the dissolution of the parties' 25-year marriage, the husband can obtain training that will enable him to become employed for the balance of his working life at $10 an hour. Under the majority's analysis, it would be just and equitable for the husband to accept the standard of living that his post-dissolution income would give him, because the standard of living that he enjoyed during the marriage was solely the product of his wife's income. I do not believe that the 1997 version of ORS 107.105(1)(d) that applies to this case was intended to work that way.