Argued and submitted July 2, 2012, on appeal and cross-appeal, award of
spousal support reversed and remanded for reconsideration; otherwise affirmed
October 30, 2013

In the Matter of the Marriage of

Sheryl L. STUART,
*Petitioner-Respondent
Cross-Appellant,*
*and*

Roger L. ELY,
*Respondent-Appellant
Cross-Respondent.*

Benton County Circuit Court
1030158; A149483

313 P3d 317

Edward L. Daniels argued the cause for appellant-cross-respondent. With him on the briefs was Law Office of Daniels and Ivers.

Pamela S. Hediger argued the cause for respondent-cross-appellant. With her on the briefs were Laurie J. Hart and Evashevski, Elliott, Cihak & Hediger, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Husband appeals a general judgment of dissolution, contending that the trial court erred in awarding wife transitional spousal support under ORS 107.105(1)(d)(A), and wife cross-appeals, asserting that the trial court should have awarded her indefinite maintenance support. We conclude that the trial court improperly categorized the spousal support in this case as transitional support and, accordingly, reverse and remand the award of spousal support; we otherwise affirm the dissolution judgment.

Neither party requests *de novo* review, and we conclude that this is not an exceptional case where such review is appropriate. *See* ORS 19.415(3) (the Court of Appeals has discretion to review *de novo* in equitable actions); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew only in exceptional cases. Consistently with that presumption against the exercise of discretion, requests [for *de novo* review] are disfavored."). Accordingly, we "state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541, 273 P3d 361 (2012).

The parties in this case married in 1990, separated in late 2009, and the dissolution petition was filed in April 2010. At the time of the dissolution in 2011, husband was 60 years old and wife was 45. During the marriage, both parties completed doctorate degrees in environmental engineering. In addition, husband was certified as a professional engineer. Wife, in 2011, became certified as a professional engineer as well.

After husband completed his PhD, the family moved from Corvallis to Idaho, and husband took a position as a professor at University of Idaho while wife completed her degree and post doctoral work and, later, taught part time. The parties' first child was born while they lived in Idaho. In 1999, the family moved to Connecticut where husband had accepted a position as a professor at Yale University. The parties' second child was born early in 2000 and, thereafter, wife taught part time at the university.

In 2003, after husband learned that he would not be offered tenure at Yale, he obtained a faculty position at Oregon State University (OSU) and the family moved to Corvallis. Initially wife was not employed outside the home, but after about a year and a half, she obtained an engineering position at a private company—CH2M Hill—in Corvallis. She explained that she had not pursued a teaching position because she had been taking care of the children and the home and had "lost any momentum or thread of doing research" and, because she had not been doing research, she was "stale as far as applying for faculty positions" and would have a difficult time attracting graduate students or pursuing funding.

During the marriage, wife was the primary homemaker and caretaker for the parties' children while husband focused on developing his academic career. At the time of the dissolution, husband was a tenured professor at OSU and wife was employed half-time as an environmental engineer at CH2M Hill. Husband earned $6,703 per month in his teaching position (which was paid at .75 full time equivalent) and could supplement that salary with research grants. Wife earned $37.78 per hour and had a gross income of $3,158 per month. Husband's employer provided heath insurance and other benefits at no cost to him; in order to obtain health insurance and other benefits from her employer, wife was required to pay. With respect to her position, wife explained that she worked half-time because there was not enough work near Corvallis at the company to provide her with a full-time position. She stated, however, that she would accept a full-time position at CH2M Hill if one became available that did not require her to leave the state and that she wanted to obtain a full-time position. She also indicated that she would leave her current employer if she could obtain a stable full-time position in an appropriate location and with health insurance.[1] Shortly before the dissolution, wife had also applied for a position as an instructor at OSU. During the marriage, the parties lived comfortably, were basically debt free, and consistently saved for retirement.

---

[1] Because wife had had breast cancer, she expressed concern about losing stable health insurance coverage.

At the dissolution trial, the parties had stipulated to the resolution of every issue with the exception of spousal support. Wife sought an award of indefinite maintenance spousal support. Husband asserted that no spousal support was appropriate in this case. After hearing testimony from husband and wife, as well as husband's vocational expert, the trial court concluded that an award of spousal support was appropriate. However, it did not award the maintenance support wife had requested, instead classifying the support as transitional spousal support. The court made a number of findings:

"In terms of findings that I think are important in terms of the spousal support issue, I think one of the factors is the age of the parties, that [husband] is 60 years old and [wife] is 45 years old, that it is a long-term marriage, a 20-plus year marriage, and both [parties] are professional licensed engineers, certified professional engineers. They have similar training and employment skills; however, in terms of work experience for several years during the marriage [wife] focused on being the primary caretaker for the children and [husband] developed his professional career to the point now that he is a tenured professor at OSU.

"In determining whether or not spousal support should be awarded I look at the following factors: The duration of the marriage, the parties' training and employment skills, the parties' work experience, and as [wife] continues her professional development and builds more experience she will be capable of having a similar income or earning capacity to [husband], but she doesn't have that right now.

"Looking at the other factors in terms of the history and then the parties' parental responsibilities, what is just and equitable given the parties' financial situation, and after reviewing all of those factors the Court's decision is that it is appropriate for [husband] to pay [wife] transitional spousal support. I know that was not the type of spousal support that was requested but I don't believe that maintenance and compensatory support are the appropriate support. I think that the purpose is to allow [wife] to have an opportunity to make advancements in the job market that she has not done in the past during the time that she was the primary caretaker *** and had primary responsibilities for the children."

The court observed that husband

> "is a .75 FTE and he has the capacity of earning more if he gets grants and does research but at least right now he's not doing that, so .75 is his gross monthly income at $6,703. At her income—and I had the hourly rate at $37.78 per hour, that if we calculated her income at .75 which would be similar to [husband's], then her income would be $4,873 per month, $4,873 if they were both working the same amount in terms of .75."

Based on those determinations, the court concluded that it was appropriate for husband to pay wife transitional spousal support of $750 per month for one year, followed by $500 per month for two years, and then $250 per month for two final years. The court explained that, in its view, that support was "just and equitable under the circumstances, the totality of the circumstances in this case, and that each party will be able to move forward and be self-sufficient."

As noted, husband appeals and asserts that the trial court erred in awarding transitional support in the absence of evidence that wife needed or intended to obtain further education or training. On cross-appeal, wife asserts that the court should have awarded her maintenance support. She also asserts that, if we conclude that "the purpose for the spousal support awarded by the trial court is not transitional in nature, the award should be reclassified as maintenance support." We review the trial court's legal conclusions for errors of law. *Kirkpatrick*, 248 Or App at 541 n 1. Furthermore, the court's determination regarding "what amount and duration of support is just and equitable is discretionary" and we, accordingly, review for abuse of discretion. *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). We agree with husband that the court erred in awarding transitional support under the circumstances of this case, and conclude that it is appropriate to remand to the trial court to consider whether to award maintenance support under the legal standards set forth herein.

In a dissolution case the court may order

> "Transitional spousal support as needed for a party to attain education and training necessary to allow the party

to prepare for reentry into the job market or for advancement therein. The factors to be considered by the court in awarding transitional support include but are not limited to:

"(i)    The duration of the marriage;

"(ii)   A party's training and employment skills;

"(iii)  A party's work experience;

"(iv)   The financial needs and resources of each party;

"(v)    The tax consequences to each party;

"(vi)   A party's custodial and child support responsibilities; and

"(vii)  Any other factors the court deems just and equitable."

ORS 107.105(1)(d)(A). Transitional spousal support "is typically awarded when one spouse has been out of the workforce for an extended period of time and needs education or on-the-job training to prepare for reentry into the job market." *Cassezza and Cassezza*, 243 Or App 400, 404, 260 P3d 504 (2011). "[T]he wording of [ORS 107.105(1)(d)(A)] limits the purposes for which transitional support may be awarded to those needed for a party to attain education and training for job market reentry or advancement." 243 Or App at 404-05 (internal quotation marks omitted). In other words, transitional support is appropriate only where it is contemplated that a party will obtain education and/or training to facilitate reentry or advancement in the job market. *See Rodrigues and Gerhards*, 258 Or App 199, 201, 309 P3d 160 (2013) (the court should have considered maintenance spousal support rather than awarding transitional spousal support where, "given wife's disability, there [was] little likelihood that [she would] be able to attain education or training that [would], in turn, enable her to work in the future"); *Cassezza*, 243 Or App at 405 (support for a party to obtain pain management treatment was not appropriately awarded as transitional support; "a party's health-related needs are taken into account in an award of maintenance spousal support").

Here, wife's career advancement was limited during the marriage by her role as a homemaker and primary caretaker for the parties' children whereas husband was able to develop his career in academia to become a tenured professor. As the trial court found, as a result of those circumstances, wife requires time to advance in the job market. Although wife can be expected to attain an earning capacity similar to husband's as she "continues her professional development and builds more experience," she did not have that capacity at the time of the dissolution. However, as noted, wife has already had significant education and training—she has a PhD in environmental engineering and is certified as a professional engineer. There is no evidence that wife requires or intends to seek additional education or training in order to facilitate her advancement in the job market. Because ORS 107.105(1)(d)(A) "limits the purposes for which transitional support may be awarded to those needed for a party to attain education and training for job market reentry or advancement," *Cassezza*, 243 Or App at 404 (internal quotation marks omitted), the trial court committed legal error in classifying the support it awarded as transitional support.

However, the court may award maintenance support "for a specified or an indefinite period." ORS 107.105(1)(d)(C). In determining whether to award maintenance support, the factors the court is to consider

"include but are not limited to:

"(i)     The duration of the marriage;

"(ii)    The age of the parties;

"(iii)   The health of the parties, including their physical, mental and emotional condition;

"(iv)    The standard of living established during the marriage;

"(v)     The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)    A party's training and employment skills;

"(vii)     A party's work experience;

"(viii)    The financial needs and resources of each party;

"(ix)      The tax consequences to each party;

"(x)       A party's custodial and child support responsibilities; and

"(xi)      Any other factors the court deems just and equitable."

*Id.* Thus, even though the circumstances were not appropriate for an award of transitional support, the court could nonetheless have awarded as maintenance support the amount it viewed as appropriate to allow wife time to continue her professional development and experience and, thereby, increase her earning capacity. As discussed above, the court classified the support as transitional support, and was of the view that maintenance support was not the appropriate classification for the support in this case. Because those legal understandings were incorrect, we remand this case for the court to consider whether an award of maintenance support is appropriate under the circumstances.[2]

On appeal and cross-appeal, award of spousal support reversed and remanded for reconsideration; otherwise affirmed.

---

[2] Because we are remanding for the court to reconsider whether to award maintenance support, we do not further address wife's assertion on cross-appeal that the trial court should have awarded indefinite maintenance support.