Argued and submitted February 12, award of spousal support reversed and remanded, otherwise affirmed August 19, 2015

In the Matter of the Marriage of

John P. DeANGELES,
*Petitioner-Appellant,*

*and*

Michelle Gates DeANGELES,
*Respondent-Respondent.*

Douglas County Circuit Court
11DO1579SN; A155365

359 P3d 371

Helen C. Tompkins argued the cause and filed the brief for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before Nakamoto, Presiding Judge, and Egan, Judge, and Wilson, Senior Judge.

NAKAMOTO, P. J.

## NAKAMOTO, P. J.

In this dissolution of marriage action, the trial court divided the parties' marital assets and awarded spousal support of $1,000 per month for two years to husband. Husband appeals, arguing that, given the length of the marriage and the disparity between the parties' incomes, the support award is not just and equitable, as required by ORS 107.105.[1] We conclude that the trial court erred in awarding husband transitional spousal support and, accordingly, reverse and remand the award of spousal support for reconsideration. We otherwise affirm the dissolution judgment.

Husband does not seek *de novo* review, and, perceiving no reason to exercise our discretion to review the facts *de novo* under ORS 19.415(3), we decline to do so. Accordingly, we "state the facts consistently with the trial court's express and implied findings, supplemented with uncontroverted information from the record." *Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541, 273 P3d 361 (2012). After the 2013 dissolution trial, the court issued a written opinion. We take the facts relevant to the award of spousal support—facts that the parties do not challenge on appeal—from that opinion, supplemented as necessary with uncontroverted information from the record.

In 2011, husband petitioned for separation, seeking, among other things, spousal support from wife; wife counterclaimed for dissolution. At trial, husband clarified that he was only seeking maintenance spousal support, not transitional support or compensatory support.

---

[1] Husband also assigns error to the trial court's treatment of some of wife's retirement accounts as her separate property and its award of half the equity in the parties' Oregon home to wife. We summarily reject those assignments. We agree with wife that she rebutted the presumption of equal contribution with respect to those retirement accounts. *See Davis and Davis*, 268 Or App 679, 681, 342 P3d 1117 (2015) (marital assets are subject to a rebuttable presumption that both parties have contributed equally to the acquisition of the property; if presumption is rebutted, the court distributes the marital asset without regard to any presumption). With respect to husband's argument that all equity in the Oregon home was husband's property and not a marital asset, the trial court did not err in concluding that the presumption of equal contribution was not rebutted given that both parties contributed to acquisition of the land and construction of the house and, for most of the marriage, both lived there and contributed to its maintenance.

Husband and wife were married for 17 years. At the time of trial, husband was 78, and wife was 56. The parties had no children together. The parties married in 1996. They had a nine-year relationship before the marriage. In 1992, four years before they married, husband retired from his career in sales at the age of approximately 57. Since retiring, husband has not worked, except for periods of building the marital residences and a short stint working as a cabinet maker. Wife was pursuing a bachelor's degree in business administration when the parties began dating in 1987; she later completed that degree. She also completed a certificate in international business after the parties married.

After wife completed her undergraduate education, she was consistently employed in full-time financial management positions, working at a hospital, the city of Roseburg, and then educational institutions. In 2005, wife obtained a position at an Arizona university, which allowed her to earn a master's degree in business administration (MBA) in 2010, while she worked there.

After wife completed her MBA, New York University offered her a three-year employment contract with its extension campus in Abu Dhabi. Husband decided to stay in Oregon. From the time of wife's employment in Abu Dhabi, the parties kept their finances completely separate. Wife contributed nothing to the Oregon house or husband's living expenses and was living on her income; husband contributed nothing to wife's living expenses, asset acquisition, or costs, and was living on the proceeds of his investments and his pension and social security.

After working in Abu Dhabi, wife accepted a position at a college in Boston and was employed there at the time of the dissolution trial. As to that position, the trial court noted that "[i]t appears that [wife's position in Boston] is of limited duration as it is set up to accomplish a project," and that, "when the task is accomplished she is out of work," and, "[i]f it is not completed on time, she will likely be out of work for not completing the agreed upon tasks in a timely way." The court also noted that "[t]here are a limited number of positions for which she is experienced and qualified," though it later stated that "there are a limited number

of jobs [like the one] that *she currently holds*." (Emphasis added.) Her annual income in 2012, the year preceding the dissolution, was over $196,000, or approximately $16,361 per month. In her support declaration, she listed monthly expenses of $6,153.

As mentioned above, husband was retired at the time of the dissolution trial, as he had been during the marriage. Husband indicated that he had some health issues but that they were under control at the point of trial. Husband's annual income in 2012, the year preceding the dissolution, was less than $24,000, approximately $1,900 per month, including income from capital gains.[2] At the time of trial, husband had a retirement account and bank accounts with a total value of approximately $40,000, plus an investment account containing approximately $189,000. In his support declaration, husband listed monthly expenses of $4,016, and at trial, he claimed to have a monthly shortfall of $2,154, if capital gains were not included as income.

During the marriage, the parties lived a lifestyle such that they avoided bearing significant debt, with the exception of mortgages on various homes that they built or lived in during the marriage and vehicle loans. At the time of dissolution, the only real property that the parties owned was a house in Oregon, which had a mortgage with a balance of approximately $82,000. The parties also were repaying vehicle loans.

At trial, husband sought an indefinite spousal support award of $5,000 per month. In its written opinion, the court discussed husband's request and provided its ruling on that request:

> "[Husband] has requested spousal support from [wife]. * * * His monthly income and expenses as set forth in exhibits 36 and 37 indicate a monthly shortfall of $2,154 if capital gains are not included as income. Exhibit 37 sets forth a schedule of how quickly the Morgan Stanley account would be depleted; assuming a 2% rate of return, if it was used to make up that shortfall. His support declaration sets forth his average monthly expenses. In review of those

---

[2] In 2010, 2011, and 2012, wife's income exceeded husband's income by amounts approximately between $159,000 and $176,000.

expenses there are some expenses that the couple did not usually include in their budget; most significantly a budget for vacation. The testimony indicated that they rarely took vacations. [Husband] has already taken one vacation in the past year that cost nearly $10,000 from his Morgan Stanley account that he did not want to dip into during the marriage.

"The average monthly expenses of [husband] certainly cannot justify the amounts of spousal support that [he] asks the court to consider; $4,000, $5,000, or $6,000 per month. The assumption of 2% rate of return or the failure to include capital gains in calculations leave in doubt [husband's] position on the amount of the shortfall; making the shortfall appear inflated.

"* * * * *

"[Husband] has indicated that he does not wish to decrease the amount in the [Morgan Stanley] account so that it can be inherited by his children from a previous relationship. Maintaining that asset for inheritance considerations is not a major concern of the court in this proceeding. Without the significant contribution of [wife] to his standard of living before their separation, it is likely that his assets would be significantly less than they currently are.

"* * * * *

"When reviewing the monthly income of [wife], it is significant to review the expenses that she has for housing in Boston, where she works, and the expenses that are expected for her staff status level at the university where she is employed. Rent for a small 2 bedroom apartment is $2,200 per month or a 3 bedroom house is $3,000 per month. From her other monthly expenses and her testimony, it appears that Boston is an expensive place to live. No evidence was presented to persuade the court to the contrary. In addition to the high level of monthly expenses, her current position and income is of limited duration; when the task is accomplished she is out of work. If it is not completed on time, she will likely be out of work for not completing the agreed upon tasks in a timely way. The evidence is that there are a limited number of jobs [like the one] that she currently holds.

"* * * * *

> "Considering the statutory factors for spousal support the court finds that it is just and equitable to order a limited and definite period of *maintenance support* to assist [husband] in refinancing the mortgage. That support will be for two years at $1,000 per month. The effort is to allow [him] a source of cash income in his efforts to refinance the Umpqua residence. The further effort is to have any spousal support obligation completed by the time [wife] will be out of employment and looking for other employment."

(Emphasis added.) Thus, in the trial court's written opinion, the court characterized the spousal support award to husband as a maintenance support award. Later, however, the court's general judgment provided that wife "shall pay to [husband] *transitional spousal support* in the sum of $1,000.00 per month for a period of two years." (Emphasis added.)

On appeal, husband argues that the trial court erred both as to the duration and amount of spousal support that it awarded. In his view, he is entitled to a permanent support award of a greater amount because of the length of the marriage; the disparity between the parties' incomes and wife's ability to pay; the age difference between the parties; his age-related health challenges; the standard of living established during the marriage, which he cannot sustain without more support from wife; and the tax benefits wife will receive when she pays him spousal support. Husband also argues that the court should not have considered the finite duration of wife's employment in Boston in determining the spousal support award because the court must make its spousal support award based on facts existing at the time of trial and because, if her income did change, wife could seek to modify the award.

Wife responds that the trial court's spousal support award was "entirely fair" and "well within the range" of the trial court's discretion. Wife argues that this case is different from the cases on which husband relies because the parties kept most aspects of their finances separate; neither supported the other; husband does not need her support; neither party raised children or acted as homemaker; and neither party gave up a job or other economic opportunities to benefit the marital unit. She argues that husband wants her to continue working indefinitely so that "the path he

chose two decades ago (an early retirement with a modest retirement income) might be enhanced by an income higher than the income he chose for himself when he retired." Wife also argues that her Boston job is term-limited, she has no house, and she cannot retire, while husband is through at least half of his retirement and will have the same lifestyle as he had during the marriage.

On appeal, the parties assume that the court awarded husband maintenance support and do not confront the fact that the judgment characterizes the award as transitional support. Accordingly, the parties' briefs address only whether the court erred in awarding husband maintenance support of $1,000 per month for two years. Though we recognize that it is likely that the trial court, consistently with its written opinion, intended to award husband maintenance, rather than transitional, spousal support in the judgment, it is the terms of the judgment that control. *See Wrona and Wrona*, 66 Or App 690, 692, 674 P2d 1213 (1984) ("The general rule is that a statement from the bench does not constitute a judgment until reduced to an order, decree or judgment."). The later-entered judgment now on appeal unambiguously states that husband was awarded transitional support. However, because an award of transitional support is not appropriate under the circumstances of this case, we conclude that the court committed legal error in awarding husband transitional support as reflected in the judgment.

Under ORS 107.105(1)(d)(A), a trial court may order "[t]ransitional spousal support as needed for a party to attain education and training necessary to allow the party to prepare for reentry into the job market or for advancement therein." Thus, as we have noted, "the wording of [that] statute limits the purposes for which transitional support may be awarded to those needed for a party to attain education and training for job market reentry or advancement." *Cassezza and Cassezza*, 243 Or App 400, 404-05, 260 P3d 504 (2011) (internal quotation marks omitted). "In other words, transitional support is appropriate only where it is contemplated that a party will obtain education and/or training to facilitate reentry or advancement in the job market." *Stuart and Ely*, 259 Or App 175, 181, 313 P3d 317 (2013).

In this case, the trial court did not make any findings to support a transitional support award, nor was there evidence in the record to support such an award. At the time of trial, husband was 78 years old and had been retired for over 20 years. There was no indication that he intended to return to the job market, nor any evidence that he needed training or education to do so. Furthermore, husband did not seek transitional support. Accordingly, the trial court committed legal error when it awarded husband transitional support. *See Stuart*, 259 Or App at 182 (trial court erred in awarding wife transitional support when there was no evidence that wife needed or intended to obtain further education or training).

If the trial court intended the award in the judgment to be maintenance support, as the parties assume, on remand, the court must consider whether an award of maintenance support of $1,000 per month for two years is "just and equitable" under the circumstances of this case, which is the precise issue that the parties have briefed for us. Maintenance spousal support generally "allows one financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party." *Abrams and Abrams*, 243 Or App 203, 207, 259 P3d 92, *rev den*, 350 Or 716 (2011). In determining the amount and duration of maintenance support, if any, the factors that the trial court considers include, but are not limited to, the duration of the marriage; the age of the parties; the health of the parties, including their physical, mental, and emotional condition; the standard of living established during the marriage; the relative income and earning capacity of the parties; a party's training, employment skills, and work experience; the financial needs and resources of each party; the tax consequences to each party; a party's custodial and child support responsibilities; and any other factors that the court deems just and equitable. ORS 107.105(1)(d)(C)(i) - (xi).

On remand, the trial court should reconsider the spousal support award in light of established legal principles regarding long-term marriages. *See Snyder and Snyder*, 102 Or App 41, 44-45, 792 P2d 478 (1990) ("[I]n marriages of long duration, where the parties have disparate earning

capacities, permanent spousal support is necessary to avoid an overly disproportionate impact on the disadvantaged spouse."); *Abrams*, 243 Or App at 207, 211 (stating that, in a long-term marriage, "the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage" and "the parties should be separated on as equal a footing as possible"). *But cf. Jacobs and Jacobs*, 179 Or App 146, 156-57, 39 P3d 251 (2002) (affirming trial court's decision that the husband was not entitled to spousal support in a long-term marriage because the husband could achieve a standard of living not overly disproportionate to that enjoyed during the marriage in that husband left the marriage with the work skills and relative earning capacity that he enjoyed before and during the marriage; the parties kept their finances separate; the husband did not contribute his earnings to the purchase of joint assets or joint expenses; the husband did not suffer a diminishment in his earning ability because of the marriage; and the husband had the ability to earn what he had earned in the past).

Should it be relevant on remand, we also note our case law concerning the efficacy of basing the duration of a spousal support award on a speculative contingency, such as a spouse's future adverse change in employment. "As a rule, it is improper to award support for a period of time that is defined by a contingency the occurrence of which is a matter of mere speculation." *See Harris and Harris*, 142 Or App 427, 431, 921 P2d 1329 (1996); *see also Waid and Waid*, 257 Or App 495, 499, 307 P3d 484 (2013) (trial court did not abuse its discretion when it did not consider wife's retirement plans in setting indefinite spousal support award; wife's ultimate retirement would provide a sufficient basis for seeking modification of spousal support award); *McDonough and McDonough*, 141 Or App 116, 120-21, 917 P2d 36 (1996) (duration of spousal support award cannot be tied to obligor spouse's eventual retirement in the absence of evidence regarding when retirement will occur and what the financial consequence of retirement will be).

Award of spousal support reversed and remanded; otherwise affirmed.