Argued and submitted January 5, affirmed July 6, 2017

In the Matter of the Marriage of

Kathleen Ann HUGHES-KUDA,
*Petitioner-Respondent,*
*and*

Alan Peter KUDA,
*Respondent-Appellant.*

Jackson County Circuit Court
13DR04446; A160747

399 P3d 478

Laura Graser argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before DeVore, Presiding Judge, and Garrett, Judge, and Duncan, Judge pro tempore.

**DeVORE, P. J.**

Husband appeals from the trial court's amended general judgment of dissolution. ORS 107.105. The judgment directed wife to pay husband spousal support of $2,750 per month for six and one-half years. Husband challenges the award, contending that the trial court erred as a matter of law by failing to award support indefinitely. We conclude that the trial court did not abuse its discretion, and we affirm.

Husband does not seek *de novo* review, ORS 19.415(3), and we do not believe such a review is warranted in this case. *See* ORAP 5.40(8)(c) (*de novo* review appropriate only in exceptional cases). As a consequence, we are "bound by the trial court's express and implicit factual findings if they are supported by any evidence in the record, and we state the facts consistently with that standard." *Morton and Morton*, 252 Or App 525, 527, 287 P3d 1227 (2012).

The parties were married for 17 years. Before meeting husband, wife had earned her medical degree and became a psychiatrist. Throughout the marriage, wife worked demanding hours. Before and during the marriage, husband owned several businesses.

The parties did not have children. The parties often ate separately, in part, due to wife's work schedule or her dietary preferences. Husband did some laundry, and sometimes each did their own. At times, wife hired people to help with home chores.

The parties moved during the course of the marriage, living in Montana, North Dakota, and finally Oregon. The moves were prompted largely by wife's employment opportunities. At each location, husband started a new business—tiling businesses, a tree farm operation, and a car renovation business. Eventually, each business proved to be unsuccessful. Husband spent much of his time improving or remodeling the parties' homes. For at least four years of the marriage, wife rented a room closer to her work, living only part time with husband.

During the marriage, the parties kept separate finances. The parties did not have joint bank accounts or

joint credit cards, and they did not purchase assets together. Wife paid all of the parties' household living expenses, including the mortgages, utilities, health insurance, home improvement costs, and other expenses. Wife also helped pay off husband's consumer debt several times. Generally, husband's financial contribution to the marriage was relatively insignificant. Occasionally, husband paid for restaurant dinners or movies, but, for the most part, husband did not spend his money on marital or household expenses. Any income husband derived from his businesses went into his personal account or went back into those businesses. In his business dealings, husband preferred to deal in cash and was secretive of how much money he had and how much debt he owed. At one point, husband had $25,000 in cash on hand, but none went toward household or marital expenses.

In 2013, the parties separated. Wife moved out of the house and rented a room from a friend. After separating, wife transitioned to forensic psychiatry because it paid well, was less demanding, and suited her health needs as she neared retirement age. Prior to the transition, wife had worked 70-hour weeks, experiencing depression, stress, high blood pressure, and weight gain. Husband continued to live in the parties' Oregon home, and, for a while, wife continued to pay the mortgage—about $4,800 per month. In October 2014, husband's elderly mother moved into the home with husband and began paying the mortgage on husband's behalf.

At the time of trial, wife was 63, and husband was 69. Although the parties had minor health issues, they were relatively healthy for their age.[1] The trial court found that wife could earn about $16,000 per month as a forensic psychiatrist and that husband's income was $969 per month from social security benefits. Husband testified that he "wasn't looking into retiring" and that he "never thought [he would] retire." Despite his unsuccessful ventures, there was no dispute that husband was a hard worker. He had a record

---

[1] Husband had had a heart attack 26 years earlier at age 43. He also complained of stiffness and limited use of his shoulder. The trial court noted that he had issues with his neck, back, and knees. Wife experienced work-related stress, high blood pressure, depression, and weight gain.

between 2012 and 2014 of generating income: $54,245 in 2012; $51,284 in 2013; and $65,375 in 2014. The trial court found that it was "difficult to ascertain the source of those funds, except mortgage payments from mother, probable vehicle transactions[,] and the [tree farm business] consulting fee."

The trial court divided property and debt in a manner that is not at issue on appeal.[2] Among the factors contained in ORS 107.105(1)(d)(C) (noted below), the court considered especially the disparity in the parties' earning capacity, the duration of the marriage, the age and health of the parties, husband's positive work ethic, and wife's desire to "slow down." In the end, the trial court awarded husband spousal support of $2,750 per month for six and one-half years, which is when wife turns 70. It is that award that husband challenges on appeal.

Under ORS 107.105(1)(d), the trial court has discretion to award an amount and duration of spousal support that is "just and equitable." *E.g.*, *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). We review the trial court's spousal support award for an abuse of discretion and "will not disturb the trial court's discretionary determination unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105." *Id*; *see Bailey and Bailey*, 248 Or App 271, 275, 273 P3d 263 (2012) (reviewing trial court's spousal support award for an abuse of discretion).

Husband argues that the award is not just and equitable, as required by statute. In his view, the trial court failed to recognize the "breadwinner/homemaker paradigm" and erred, as a matter of law, when failing to award indefinite spousal support.[3] In determining maintenance support,

---

[2] For perspective on the spousal support award, we note that husband received 50 percent equity from sale of the Oregon home (listed at $650,000 with a mortgage of $508,000); 50 percent of wife's retirement account (total account presently worth $56,107); his retirement account (about $4,000); his classic cars; and his bank accounts.

[3] When referring to spousal support, the trial court remarked that, "if the roles were reversed, entitlement to spousal support would not be in serious question." Based on that remark, husband suggests that the trial court would have awarded *indefinite* spousal support if he were a woman. Read in context, we understand the remark to acknowledge husband's entitlement to support—that

ORS 107.105(1)(d)(C) requires that the trial court consider a number of factors:

"The factors to be considered by the court in awarding spousal maintenance include but are not limited to:

"(i)     The duration of the marriage;

"(ii)    The age of the parties;

"(iii)   The health of the parties, including their physical, mental and emotional condition;

"(iv)    The standard of living established during the marriage;

"(v)     The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)    A party's training and employment skills;

"(vii)   A party's work experience;

"(viii)  The financial needs and resources of each party;

"(ix)    The tax consequences to each party;

"(x)     A party's custodial and child support responsibilities; and

"(xi)    Any other factors the court deems just and equitable."

Given this statute, the trial court has discretion to consider the statutory factors in light of its factual findings. *Cullen and Cullen*, 223 Or App 183, 190, 194 P3d 866 (2008) ("In awarding spousal support, no one factor is dispositive." (Internal quotation marks omitted.)). In this case, the court did just that, expressly relying on its findings with reference to the statutory factors in reaching its conclusion. Accordingly, we reject husband's initial contention that the trial court erred as a matter of law by failing to apply the correct methodology.

---

is, to *some* support. Regardless, the remark does not affect our review of the court's decisions as to the duration and amount of support—the resulting issues that the court considered separately.

The remaining question is whether the trial court abused its discretion in awarding husband spousal support of $2,750 per month for six and one-half years. *See Brush and Brush*, 279 Or App 25, 35, 377 P3d 620 (2016) (the appellate court will not interfere with the trial court's determination of what constitutes a "just and equitable" support award unless there is an abuse of discretion). A pair of cases point to the answer.

In *Berg*, 250 Or App 1, the parties ended an 18-year marriage. The parties were past middle-age. One was a high-earning spouse, and the other was a low-earning spouse. The trial court's decision terminated spousal support after eight years, when the husband, the high-earning spouse, would turn 72. On wife's appeal, we concluded:

"[W]e agree with wife that, in a marriage of this length involving a large disparity in earning capacities, one might expect an award of longer duration. * * * However, as noted, the trial court did not make any findings explaining its award of support. Given husband's age at the end of the trial (67), his health (husband had had prostate surgery and had previously suffered and recovered from a stroke), and the nature of his work, there is evidence from which the trial court could have found that it was unlikely that husband would work past the age of 72. Our role is not to second guess the trial court's reasoning or substitute our judgment for that of the trial court. We cannot say that either the amount or duration of the award determined by the trial court to be just and equitable was legally impermissible, *i.e.*, was an abuse of discretion."

*Id.* at 5. We affirmed.

In *Jacobs and Jacobs*, 179 Or App 146, 39 P3d 251 (2002), the parties had a long marriage and uncommon financial circumstances. The parties had been married for 22 years. The wife was 51, and the husband was 61. The parties did not have children. They kept their finances separate. The wife worked as a nurse and later the chief nursing officer. The husband installed carpet and tile and had worked steadily throughout the marriage. Husband did not inform wife of the amount of money he made from his work. The major household expenses, including rent, mortgages, and

utilities, were paid for by the wife. Neither party assumed significant homemaking duties; each party did his or her laundry and they dined at restaurants frequently. At the time of trial, the husband was unemployed and testified that he could earn between $7 and $8 per hour supervising carpet installations. He was eligible to receive a total of $300 to $350 per month in Social Security and pension benefits. The wife earned about $99,000 annually. She had several retirement accounts and was likely to enjoy a "comfortable income upon her retirement." *Id.* at 150. Because the case has parallels, we quote our decision at length:

"In this 22-year marriage, the parties have kept their finances separate. Each has been employed during the marriage, and husband leaves the marriage with the same work skills and relative earning capacity that he enjoyed before and during it. Husband has supported himself during the marriage with his own earnings and purchased significant assets with those earnings for his own personal use. *He has not contributed any of his earnings to the purchase of joint assets or to joint expenses. Moreover, there is no evidence that he has suffered a diminishment in his earning ability because of the marriage, nor is there credible evidence that his health does not permit him to presently earn what he has earned in the past.* Consequently, because husband can achieve a standard of living not overly disproportionate to that enjoyed during the marriage, we conclude that it is not just and proper to award spousal support on these facts.

"The dissent would award husband spousal support to compensate for the fact that wife will not be furnishing the costs of his housing after the dissolution, even though he is able to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage based on his own efforts. The dissent asserts that our decision restricts husband to a much lower standard of living than he enjoyed during the marriage. We reject that argument because the evidence does not support it. For 35 years, husband has been steadily employed and has been able to support himself in the manner that he has desired. He will continue to enjoy that same earning ability after the dissolution. *The mere fact that wife has paid the rental and mortgage expenses, the utility bills, and the property taxes on the dwellings in which they lived during the marriage and that she makes more money does not lead to the conclusion that*

*she should be required to pay indefinite spousal support.* Although husband points to the standard of living established during the marriage, *that was a standard of living established solely because of wife's efforts and in the absence of any contribution by him.*"

*Id.* at 156-57 (emphases added). We upheld the trial court's decision to award no spousal support to husband.

Similarly here, we have a relatively long marriage, parties who married later in life, a low-earning spouse who does not plan to retire, and a high-earning spouse who has acted to slow the pace of her career as she nears retirement age. Significantly, neither spouse was required to have been at home raising children, and both parties pursued their respective careers. They kept their finances separate, and they did not purchase assets together. The high-earning spouse paid the household expenses, and the low-earning spouse contributed comparatively little financially. Contrary to husband's contention, there was evidence to support the conclusion that, although husband moved to follow wife's career, husband was not a typical caregiver or homemaker who curtailed a career to provide a home for the benefit of the family. Instead, husband operated his businesses, and, largely, he kept his business proceeds to himself. Any improvements husband made to the homes benefitted him when the parties later sold the homes. The record supports the trial court's conclusions that wife would likely retire in the coming years and that nothing prevented husband from gainful employment, using the same skills and training he had prior to and during the marriage.

Based on that record, we conclude that the trial court did not abuse its discretion when awarding husband spousal support of $2,750 per month for six and one-half years.

Affirmed.