Argued and submitted March 15, judgment modified to award indefinite spousal support of $1,800 per month; otherwise affirmed May 25, petition for review denied September 15, 2011 (350 Or 716)

In the Matter of the Marriage of

Derek ABRAMS,
aka Steven D. Abrams,
*Petitioner-Respondent,*

*and*

Lisa Lee ABRAMS,
*Respondent-Appellant.*

Linn County Circuit Court
081427; A142232

259 P3d 92

Chelsea D. Armstrong argued the cause for appellant. With her on the briefs was Sherman, Sherman, Johnnie & Hoyt, LLP.

Lorena Reynolds argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

This case involves the award of spousal support upon the dissolution of the parties' 28-year marriage. Wife appeals from a judgment awarding transitional support to her in the amount of $750 per month for 24 months. Wife contends that she is entitled to a longer duration of transitional support and to indefinite maintenance support. On *de novo* review, ORS 19.415,[1] we modify the judgment to award maintenance support of $1,800 per month and otherwise affirm.

The parties married in 1980 when they were 19 years old. During the last seven years of the marriage, they separated "in house" several times, and in 2005, wife moved to Nevada. At the time of trial, both parties were age 48 and in good health. The parties have one adult child who is independent.

This appeal relates only to the trial court's award of spousal support.

Husband was the primary wage earner during the marriage and has consistently had stable full-time employment. At the time of dissolution, he worked for Oregon State University as an information technologist, and the trial court found that his income was approximately $7,600 per month. His monthly expenses as shown on his uniform support affidavit were approximately $6,175. Husband testified that he is also attempting to develop a musical entertainment business, but that it is not yet profitable. Should the business not become profitable in the next year, husband's intention is to abandon it. Should the business become profitable, his intention is to sell it.

At the time of the marriage, the parties agreed that they would live off of husband's income and that they would not go into debt. Wife was a homemaker throughout the marriage and had primary responsibility for childcare. She also managed the parties' finances and frugal lifestyle and earned

---

[1] Our standard of review in this case is governed by ORS 19.415, which was recently amended. Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.

a small amount of income from a variety of part-time jobs, including house cleaning, working in retail and in restaurants, and driving for the United States Postal Service. In 2004, wife obtained a hair stylist license. She volunteered at a salon before the parties separated, because she did not need the income and wanted to improve her skills.

In 2005, the parties separated, and wife moved in with family in Nevada. During the first year of separation, she did not work. She had access to the parties' joint accounts and used her debit card to withdraw small amounts of cash each month and to pay for living expenses. Husband also gave her $400 to $500 when she requested it; but, wife was frugal and did not have many expenses. Husband continued to pay for wife's health and auto insurance.

After the first year of separation, wife began to work cutting hair. Most recently, during the seven months preceding trial, wife was employed at a salon in Nevada at minimum wage and earned approximately $990 per month. Wife testified that the economy has had a negative impact on her employment as a stylist and on her ability to find other work. She testified that she has not found full-time employment in a hair salon, but that, if the economy improves, she hopes to have income of $2,000 per month. The trial court imputed to wife a potential minimum wage income of $1,455. Wife's uniform support affidavit lists monthly expenses of approximately $3,380.

Both of the parties enjoyed some success playing poker professionally. At one time, wife aspired to become a professional poker player, but that did not develop. Husband used the parties' poker earnings to start his entertainment business.

At trial, wife sought 48 months of transitional support of $750 and indefinite maintenance support of $2,000. The trial court awarded wife 24 months of transitional support of $750 per month, but no maintenance support. In its letter opinion, the trial court explained that no maintenance support was warranted because "[w]ife is young enough and healthy enough to improve her earning ability and seek employment within two years that would sustain her."

Wife is satisfied with the amount of transitional support, but she contends on appeal that the duration of transitional support is insufficient to allow her to attain full-time employment in light of current economic conditions. She contends, further, that in light of the length of the marriage and the disparity in the parties' earning capacities, she is entitled to an award of maintenance support in the amount of $2,000 per month.

In support of the trial court's award, husband argues that, considering wife's already-marketable skills as a hair stylist, two years is sufficient to allow her to attain a level of self-sufficiency. *See* ORS 107.105(1)(d)(A); *Harris and Harris*, 349 Or 393, 416, 244 P3d 801 (2010) (transitional support is appropriate in an amount and duration "needed for a spouse to obtain the training and education necessary for reentry into the job market"). Husband contends, further, that the trial court appropriately determined that an award of maintenance support, *see* ORS 107.105(1)(d)(C), is unnecessary, because the parties lived frugally during the marriage, and wife's eventual earnings as a hair stylist will be sufficient to support the lifestyle that she has chosen for herself during the years of separation. We conclude that the trial court's award of transitional support is adequate and affirm that award without further discussion. We write to address the issue of maintenance support and conclude that, without an award of spousal maintenance to wife, the judgment was not just and equitable, and that an award of $1,800 per month in indefinite support is appropriate.

The court is authorized by ORS 107.105(1)(d) to award spousal support in an amount and for a duration that is "just and equitable." Maintenance support, the type of support at issue in this case, allows one financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party. *Harris*, 349 Or at 416. In a long-term marriage such as this, the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage, *Mallorie and Mallorie*, 200 Or App 204, 219-20, 113 P3d 924 (2005), *rev den*, 340 Or 18 (2006), while at the same time keeping in mind the objective of ending the

support/dependency relationship within a reasonable time, if that is possible without injustice or undue hardship, *Taylor and Taylor*, 136 Or App 416, 419, 902 P2d 120 (1995).

A spousal support award should be based on circumstances existing at the time of dissolution, but must also take into account the lifestyle enjoyed by the parties during the marriage. *Cullen and Cullen*, 223 Or App 183, 190, 194 P3d 866 (2008). In addition, spousal support should not be set at an amount that is higher than the obligor can reasonably afford to pay at the time of dissolution. *Id.*

An award of spousal support is not precluded when one party has received a lump sum award, such as wife's equalizing judgment in this case, *Bounds and Bounds*, 185 Or App 619, 624, 60 P3d 1090 (2003), as long as it is otherwise just and equitable to award support to enable the dependent spouse to maintain a standard of living comparable to that enjoyed during the marriage. In determining the amount and duration of support, the court must consider the factors outlined in the statute, ORS 107.105(1)(d)(C), as well as the other financial provisions of the judgment; none can be considered in isolation. *Grove and Grove*, 280 Or 341, 344, 571 P2d 477, *modified on other grounds*, 280 Or 769, 572 P2d 1320 (1977).

The statutory provision relating to maintenance support, ORS 107.105(1)(d)(C), provides that the court may award

"[s]pousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period. The factors to be considered by the court in awarding spousal maintenance include but are not limited to:

"(i) The duration of the marriage;

"(ii) The age of the parties;

"(iii) The health of the parties, including their physical, mental and emotional condition;

"(iv) The standard of living established during the marriage;

"(v) The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi) A party's training and employment skills;

"(vii) A party's work experience;

"(viii) The financial needs and resources of each party;

"(ix) The tax consequences to each party;

"(x) A party's custodial and child support responsibilities; and

"(xi) Any other factors the court deems just and equitable."

We consider each of the relevant factors:

*The duration of the marriage.* This is a marriage of over 28 years and, even with the periods of separation, it is considered to be long-term, thus weighing in favor of a support award that places the parties in relative parity regarding their standard of living, *Sather and Sather*, 238 Or App 235, 238, 243 P3d 76 (2010), and—to the extent possible—allows the parties to maintain the standard of living enjoyed during the marriage. *McLauchlan and McLauchlan*, 227 Or App 476, 206 P3d 622, *rev den*, 346 Or 363 (2009); *Boyd and Boyd*, 226 Or App 292, 301, 203 P3d 312 (2009); *Weakley and Weakley*, 177 Or App 363, 371, 33 P3d 1045 (2001).

*The age of the parties.* Both parties were age 48 at the time of trial. Their ages make it less likely that either of them will undergo a significant career change during the remainder of their lifetimes.

*The health of the parties.* The parties are both in good health, weighing in favor of their ability to earn their potential incomes.

*Standard of living during the marriage.* The record shows that the parties lived modestly but comfortably during the marriage on husband's salary. They had health and dental insurance through husband's employment, were able to save for retirement and pay off the mortgage on their small

home, took a family vacation each year, and were debt-free at the time of dissolution. During the most recent period of separation, wife lived with family or friends in Nevada, paying a small amount of rent, and, although she did have access to the parties' accounts and used her debit card to the parties' joint account to pay her expenses, she did not draw significantly from the parties' resources. Husband asserts that wife's chosen standard of living during the period of separation represents the lifestyle "during the marriage" and should guide the support decision and militates against an award of spousal support. However, we have read the transcript, and it is clear that wife's modest—indeed, spartan—lifestyle during the period of separation was driven by a desire not to deplete the marital resources and the hope that the parties would reconcile. We decline to consider that lifestyle as exemplary of the standard of living during the marriage.

*The relative income and earning capacity of the parties.* The parties' incomes and earning capacities are clearly disparate. Husband is college-educated, has held full-time employment for the duration of the marriage, and is regularly employed, and the record shows that his gross monthly income in 2008 was $7,739. Although wife held some part-time employment, her primary role during the marriage was as a homemaker, and she did not begin to develop a career until she became trained as a hair stylist in 2004; her average monthly income from hair styling in 2008 was $992. The trial court attributed to wife a minimum-wage monthly income of $1,455, and wife testified that, if the economy should improve, she hoped to earn $2,000 per month. Even under the best of circumstances, however, wife's earning capacity is a fraction of husband's.

In husband's view, wife's more limited income is self-imposed due to her lifestyle decisions and conduct over the last several years showing that she places her social and personal life over full-time work, as illustrated by her decision to quit her minimum wage job cutting hair when her employer would not give her time off for her daughter's wedding, and to spend her time instead attempting to develop a career as a professional poker player, an irregular, erratic, source of income. He argues that "[a]ll of the evidence supports the

conclusion that she intends to rely solely on Husband for support so long as the Court will allow her to do so." We understand the record differently. Contrary to husband's contention, wife is interested in working and has made an effort to do so.

*Training and employment skills.* As noted, husband has a college degree and has been stably employed throughout the marriage. Wife's license as a hair stylist is her only specialized training, and it is relatively recent.

*Work experience.* Husband has had stable employment throughout the marriage and had been with his current employer for nine years at the time of trial. Wife, in contrast, has dabbled in employment and has never worked full time.

*Financial resources and needs.* As noted, wife's earning capacity is considerably less than husband's, and he has the ability to live comfortably while also paying support. It is true, as we have noted, that wife will receive an equalizing judgment of $140,000 as part of the property division; that money could be a resource for the purchase of a home or as a retirement investment. Contrary to husband's contention, however, it is not income-producing property such that it reduces her need for monthly support. *See Grove*, 280 Or at 344 (property division should be considered in determining whether to award spousal support, especially if the purpose of the property award is to provide income). The parties' uniform support affidavits show that wife's monthly expenses are approximately half of husband's.

In wife's view, the statutory factors show that, given the length of the marriage, the standard of living enjoyed during the marriage, and the disparity in the parties' earning capacities, an award of indefinite support is just and equitable. *See Morrison and Morrison*, 240 Or App 656, 672, 247 P3d 1281 (2011). We agree that based on the statutory factors and our case law, indefinite support is appropriate. It is true, as husband argues, and as the cases indicate, that in determining the amount and duration of spousal support, the goal of self-sufficiency is an important consideration. However, in a long-term marriage such as this, where the parties should be separated on as equal a footing as possible, the relevant level of self-sufficiency is that which allows them to maintain

a standard of living that is comparable to that enjoyed during the marriage. *Id.*; *McLauchlan*, 227 Or App at 490; *Jacobs and Jacobs,* 179 Or App 146, 156, 39 P3d 251 (2002) (spousal support not appropriate where spouse can independently achieve level of self-sufficiency that will maintain standard of living that is not overly disproportionate to that enjoyed during the marriage).[2] Wife, having spent at least the first 20 years of the marriage working primarily as a homemaker, is seriously disadvantaged in her earning capacity, and, although wife's income might increase over a transitional period of two years, the parties agree that her earning capacity will not exceed $2,000. On that amount of income, wife could be minimally self-supporting, but not in a manner comparable to that enjoyed during the marriage. Husband, in contrast, has a stable career in information technology, with a prospect for income growth and with a current income sufficient to pay spousal support and to allow both parties to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage. We reject husband's characterization of the record as showing that wife wants to live off of husband as long as possible and has made no effort to improve her standard of living.

As for the amount of support, we conclude that, based on the parties' uniform support affidavits, support of $1,800 per month is just and equitable. That is an amount that husband can afford to pay and that, together with the equalizing judgment, will allow wife to buy a home, to continue to pursue a career in hair styling, and to live a lifestyle comparable to that enjoyed during the marriage. It is true, as husband points out, that the payment of spousal support will have an adverse effect on his standard of living, but that is a consequence of dissolution. *See Ley and Ley*, 133 Or App 138, 142, 890 P2d 440 (1995) ("[T]here are few dissolution cases in which the parties' standards of living do not go down."). And,

---

[2] We note that the "not overly disproportionate" standard that has been so frequently cited in our cases was a statutory standard, *former* ORS 107.105 (1997), and the statute no longer includes that exact construct. It continues, however, to be an appropriate guideline under the general considerations. *See, e.g., Boyd*, 226 Or App at 302; *English and English*, 223 Or App 196, 194 P3d 887 (2008) ("Under ORS 107.105(1)(d)(B)(vi), the amount of support awarded by the trial court will allow wife to close the gap between her income and expenses and will provide her with a standard of living not disproportionate to that maintained during the marriage.").

as husband also correctly states, "[i]t is appropriate that the impact of the reduction of the standard of living be borne equally by the parties." An award of monthly maintenance spousal support of $1,800 will allow for just such a sharing.

Supplemental judgment modified to award indefinite maintenance spousal support of $1,800 per month; otherwise affirmed.