Argued and submitted February 3, affirmed May 16, 2012

In the Matter of the Marriage of

Keith Ryder BERG,
*Petitioner-Respondent,*
*and*

Debra Lynn BERG,
*Respondent-Appellant.*

Jackson County Circuit Court
052380D2; A146447

279 P3d 286

George W. Kelly argued the cause and filed the briefs for appellant.

Laura Graser argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

In this appeal from a judgment dissolving the parties' 18-year marriage, wife assigns error to the spousal support award of $15,000 per month for five years, contending that either the duration or the amount of support should be increased. Wife also assigns error to the property division, contending that the trial court erred in treating as a marital obligation indebtedness that the parties incurred for the remodel of their kitchen after the filing of the petition for dissolution. We conclude that the trial court did not err or abuse its discretion in either the spousal support award or the property division, and affirm.

On appeal, wife does not seek *de novo* review of the spousal support award. ORS 19.415(3)(b). She contends, however, that the award of support is not just and equitable, as required by ORS 107.105(1)(d). The ultimate determination of what amount and duration of support is just and equitable is discretionary. *Bailey and Bailey*, 248 Or App 271, 275, 273 P3d 263 (2012). We will not disturb the trial court's discretionary determination unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105. *See Kunze and Kunze*, 337 Or 122, 136, 92 P3d 100 (2004) (applying standard in context of review of property division). Said differently, the trial court's award will be upheld if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is "just and equitable" represents a choice among legally correct alternatives. *See Gay and Gay*, 250 Or App 31, 279 P3d 265 (2012) (applying review standard); *Shelton and Shelton*, 196 Or App 221, 233-34, 100 P3d 1101 (2004), *adh'd to on recons*, 197 Or App 391, 105 P3d 944 (2005) (applying review standard). The trial court's findings are reviewed for evidence in the record. *Porter and Griffin*, 245 Or App 178, 182, 262 P3d 1169 (2011).

The parties were married in August 1992 and separated in 2005, when husband filed for dissolution of the marriage. They had been married for 17 years at the time of trial in May 2009. At the conclusion of trial, husband was age 67, and wife was age 55. The parties each have children from

other relationships, but there are no children from the marriage.

Husband has been a dentist since 1968. Although he was 67 years old by the end of the trial and testified that he could foresee slowing down in his practice, he has no immediate plans to retire. The trial court found that husband's gross monthly income is approximately $42,000.

Wife began working as husband's office manager shortly after the parties were married, and it is undisputed that she made significant contributions to the business and made it more profitable. Wife was paid for her work and, beginning in 1995, the parties drew equal incomes from the dental practice. Wife hopes to retrain as a massage therapist, and the trial court found that she has a potential monthly earning capacity of $4,167.

In 2006, after the petition for dissolution had been filed, husband decided to remodel the kitchen in the parties' home on Old Cherry Lane. He did so with wife's consent, incurring additional debt for the remodel in the range of $180,000 to $190,000. In part to pay for the remodel and in part to consolidate credit card debt, husband took out a second mortgage on the Old Cherry Lane house, increasing the amount owed from $63,000 to $253,000. At trial, the parties described different understandings of how that debt would be borne. Wife testified that she went along with husband's plan to remodel the house, which he would be living in, only on the condition that he would be solely responsible for the cost. Husband testified that he did not remember specifically agreeing to that arrangement. Rather, husband believed that the remodel expense would translate into an identical increase in the value of the home and the parties' equity; thus, he might have agreed with wife that the remodel expense would have no adverse financial impact on her.

The parties owned considerable property at the time of dissolution, and, by and large, the trial court split those assets equally, with each party receiving property valued at approximately $1.24 million. The issues on appeal concern only the award of spousal support and the characterization and division of the debt for the remodeling of the kitchen in the Old Cherry Lane house.

We first address the issue of spousal support. Wife initially requested a combination of compensatory, maintenance, and transitional support, stepped down from $18,000 per month for three years to $10,000 per month for three years and, finally, to $5,000 per month indefinitely. At trial, wife testified that, in the interests of becoming financially independent and in lieu of indefinite support, wife would accept $25,000 per month for a period of three years, followed by $20,000 per month for five years. In a trial memorandum to the court, wife's counsel continued to suggest an award of indefinite support as an alternative. The trial court awarded wife maintenance support of $15,000 per month for five years.

In determining what amount of maintenance support is just and equitable, the court considers the duration of the marriage, the ages of the parties, the physical and emotional health of the parties, the standard of living during the marriage, the parties' relative incomes and earning capacities, their training, employment skills, and work experiences, their financial resources, the tax consequences, and the parties' needs. ORS 107.105(1)(d)(C). Wife contends that, considering the length of the marriage, the self-indulgent lifestyle of the parties during the marriage, wife's high monthly expenses (wife's uniform support affidavit listed monthly expenses of approximately $35,000), and husband's much greater earning capacity, a just and equitable support award must be either indefinite in the amount of $15,000 per month, or for a period of eight years at the higher amounts requested by wife at trial, so that she could save for retirement.

Husband responds that, at trial, wife explicitly expressed a preference against indefinite support and should not now be heard to contend otherwise. Further, husband asserts that the parties' lifestyle during the marriage, although high, included the accumulation of considerable debt for which husband remains responsible and that he cannot afford to pay wife support that would maintain that lifestyle.

The trial court did not make any express findings with respect to spousal support or give any explanation for

the amount of spousal support or why it limited support to five years. As for the amount, we can assume that the court found that $15,000 per month in support, along with wife's anticipated earnings and the proceeds of the considerable property awarded to her, would allow wife to maintain a comfortable life style not overly disproportionate to that enjoyed during the marriage. That determination is supported by the record.

As for the duration of the award, we agree with wife that, in a marriage of this length involving a large disparity in earning capacities, one might expect an award of longer duration. *See Cullen and Cullen*, 223 Or App 183, 190, 194 P3d 866 (2008) (in a long-term marriage, the primary goal of maintenance support is to provide a standard of living comparable to the one enjoyed during the marriage). However, as noted, the trial court did not make any findings explaining its award of support. Given husband's age at the end of the trial (67), his health (husband had had prostate surgery and had previously suffered and recovered from a stroke), and the nature of his work, there is evidence from which the trial court could have found that it was unlikely that husband would work past the age of 72. Our role is not to second guess the trial court's reasoning or substitute our judgment for that of the trial court. We cannot say that either the amount or duration of the award determined by the trial court to be just and equitable was legally impermissible, *i.e.*, was an abuse of discretion.

Our analysis is similar with respect to the property division. The dispute centers on the extent to which the parties' additional indebtedness for the remodel of their home should be treated as marital debt. After husband had filed the petition for dissolution, the parties apparently agreed that, post-dissolution, he would continue to live in the marital residence, which he had owned before the parties were married. As previously noted, husband wished to make an extensive remodel of the home and he gained wife's permission to incur debt for that purpose. In fact, wife participated in the remodel, selecting carpet and paint. Husband took out a second mortgage on the Old Cherry Lane house for the purpose of paying for the remodel and consolidating the parties'

credit card debt. At the time of trial, the outstanding balance on the second mortgage was $253,637.

The evidence shows that the parties had different understandings as to how that additional indebtedness would be treated in the dissolution. Wife testified that she gave her permission for the remodel only on the condition that husband alone would be liable for the increased indebtedness due to the remodel, as the remodel would be for his benefit exclusively, and that she did not believe she should share in the full amount of the second mortgage. She believed that all but $63,518 of the second mortgage is attributable to the remodel.

Husband held a different view of the parties' understanding, testifying that, although he believed that wife thought he would bear the entire responsibility for the debt, he also understood that the increase in equity in the property after the remodel would offset the additional indebtedness. In fact, although the remodel cost between $180,000 and $190,000, it added only about $40,000 to the value of the house. In husband's view, the entire outstanding balance on the second mortgage is marital debt. The trial court seems to have imposed a compromise solution. In determining the net marital asset value of the Old Cherry Lane house for purposes of the property division, the court reduced the market value by $155,655 on account of the second mortgage.

On appeal, wife contends that the trial court's decision to allocate more than $63,518 as marital indebtedness due to the second mortgage on the Old Cherry Lane property constitutes legal error, because the court has failed to enforce the parties' predissolution agreement. Leaving aside the question of whether the failure to enforce a predissolution agreement as to marital debt under these circumstances could be legal error, here, there is evidence from which the trial court could have found that the parties were not actually in agreement and had different understandings of how the indebtedness would be treated.

ORS 107.105(1)(f) requires that the division of marital property be "just and proper in all the circumstances." As previously noted, the trial court awarded each party property

valued at approximately $1.24 million. As with spousal support, the trial court has discretion to determine the division of property in dissolution. *Kunze*, 337 Or at 136. Our review of that division is for whether the trial court properly exercised its discretion, *i.e.*, chose a legally permissible division of property in light of the "just and proper" standard. Viewed in light of the entire division of property, which, as noted, included an equal division of the parties' substantial holdings,[1] we cannot say that the trial court abused its discretion in determining that $155,655 of the second mortgage was marital debt.

Affirmed.

---

[1] The trial court equally divided the parties' assets having a net value of approximately $2.48 million. Other substantial assets were ordered sold and the proceeds divided equally.