Argued and submitted December 9, 2014, portions of the judgment relating to spousal maintenance support and life insurance reversed and remanded for reconsideration; otherwise affirmed June 17, 2015

In the Matter of the Marriage of

Vickie Lee MITCHELL,
*Petitioner-Respondent,*
*and*

Sidney Floyd MITCHELL,
*Respondent-Appellant.*

Klamath County Circuit Court
1104319CV; A154284

353 P3d 28

Jeffrey E. Potter argued the cause for appellant. With him on the briefs was Gardner, Potter, Budge, Spickard & Cascagnette, LLC.

Nathan J. Ratliff argued the cause for respondent. With him on the brief was Parks & Ratliff, P.C.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Husband appeals a general judgment of dissolution, challenging the trial court's division of husband's military retirement benefits, award of spousal support to wife, and order that husband maintain life insurance, naming wife as beneficiary. He raises four assignments of error on appeal, arguing that the court erred when it (1) awarded wife 50 percent of the divisible portion of husband's military retirement benefits, (2) awarded wife spousal maintenance support in the amount of $1,000 per month, for an indefinite period of time, (3) awarded wife transitional support in the amount of $3,500 per month for 60 months, and (4) ordered husband to maintain a life insurance policy, naming wife as beneficiary, for at least $750,000 as long as husband is required to pay spousal support, and then at least $250,000 thereafter. We affirm with regard to husband's first assignment of error and reject, without discussion, husband's third assignment of error; however, for the reasons stated below, we reverse with regard to husband's second and fourth assignments of error and remand for reconsideration the portions of the judgment relating to spousal maintenance support and life insurance.

We begin with a brief overview of the facts, and we provide additional facts as needed in our discussion below. Husband does not request *de novo* review of this case, and we decline to exercise our discretion to review this case *de novo. See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) (we exercise our discretion to review *de novo* only in "exceptional cases"). Therefore, we are "bound by the trial court's findings of historical fact that are supported by any evidence in the record." *Porter and Griffin,* 245 Or App 178, 182-83, 262 P3d 1169 (2011). We present the facts consistently with that standard.

Husband and wife were married for 20 years and had two children, ages 16 and 12, at the time of the dissolution. Prior to the marriage, husband had obtained a

bachelor's degree and served as a military officer in the Marine Corps. During the marriage, husband continued to serve in the Marine Corps, and he also obtained a master's degree. He retired from the military after 24 years of service, having served eight years before the marriage and 16 years during the marriage. After retiring from the military, and before the parties separated, husband worked in a county management position in Klamath Falls, Oregon. Then, after the parties separated, husband moved to California, where he had obtained a position as a Marine Corps Community Services Deputy Director, earning $10,000 per month.

Wife had also obtained a bachelor's degree before the marriage, and had worked as a manager at a retail clothing store. At times during the marriage, wife worked as a bank teller, retail clothing sales clerk, cheer coach, and legal secretary, but she was unable to fully utilize her education, training, and experience in a professional capacity, in part because the parties had relocated 11 times due to husband's military obligations. Wife also spent time as a stay-at-home mother and, although both parties were actively involved in their children's lives, wife was the primary parent. Wife was not employed at the time of the dissolution, but she was taking preliminary courses at Klamath Community College with the intent of ultimately obtaining a degree as a dental hygienist. She estimated that she would be able to earn $50,000 per year as a dental hygienist.

Prior to the dissolution proceedings, husband and wife entered into a mediated agreement in which they agreed upon issues of custody and parenting time in regards to their two children. In that agreement, they also agreed to split most of their property evenly; the only items of property that they disagreed upon, and asked the court to divide, were husband's military retirement benefits, the marital residence, and the value of husband's truck. At trial, wife also sought spousal support in the following amounts: transitional support in the amount of $1,500 per month for five years; compensatory support in the amount of $2,000 per month for 15 years; and maintenance support in the amount of $2,000 per month for five years, $2,750 for two years, and then $2,000 per month indefinitely. Wife also asked that husband be required to maintain a life insurance policy

in the amount of $750,000 "to secure his child and spousal support obligation, and her share of the military retirement [benefits]."

The parties presented their evidence and testimony as to those issues and, at the close of the evidentiary portion of the proceeding, wife submitted written proposed findings of fact, and husband submitted written proposed findings of fact and conclusions of law. Regarding spousal support, husband suggested that wife should receive only transitional support, in the amount of $3,500 per month for eight months, and then $2,500 per month for 52 months. He also suggested that the life insurance policy that he would be required to maintain should be in the amount of only $250,000 for 10 years.

Closing arguments were held more than three weeks later, and the court subsequently issued a letter opinion in which it set forth its findings of fact and explained its decisions regarding property division, spousal support, and life insurance. Regarding the parties' property, the court (1) awarded wife 50 percent of the divisible portion of husband's military retirement benefits, (2) ordered the parties to sell the marital residence and divide the proceeds equally, and (3) rejected wife's request for an equalizing judgment for 50 percent of the value of husband's truck. Regarding spousal support, the court awarded wife (1) transitional support in the amount of $3,500 per month for 60 months, to allow her to complete her education and become fully employed as a dental hygienist; and (2) spousal maintenance support in the amount of $1,000 per month indefinitely. Finally, the court noted that "[l]ife insurance is necessary to provide income to replace both the retirement benefits being awarded to [wife] as well as spousal support should [husband] die"; thus, it ordered husband to provide life insurance, naming wife as beneficiary, in the amount of $750,000 "so long as he has a spousal support obligation," and, thereafter, in the amount of $250,000.

Husband then filed a motion to reopen and supplement the record and for clarification, as well as an objection to the proposed general judgment. As discussed in further detail below, two of the issues raised in husband's motion

related to the spousal support award and life insurance requirement set forth in the court's letter opinion. After a hearing, the court issued a second letter opinion and denied husband's motion. The court then entered the dissolution judgment, which incorporated its original letter opinion.

## HUSBAND'S MILITARY RETIREMENT BENEFITS

In its first letter opinion, the trial court explained its division of husband's retirement benefits as follows:

> "The court is to provide for the division of the retirement or pension plan as may be just and proper in all the circumstances. ORS 107.105(1)(f). [Husband] receives a military pension of $4634 together with a military disability pension of $1747. The general pension which is subject to division is taxable. The disability pension is neither taxable nor subject to division. [Husband] receives a total pension benefit of $6381 per month. He was in service 24 years, 16 during which the parties were married. If the court awarded [wife] a prorated portion of the entire pension, she would receive approximately $2100 per month (1/2 x 16/24 x $6381). Recognizing the court's limitation in dividing the pension and that [husband] is receiving a $1747 non-taxable benefit, I find it is just and proper under the circumstances to award [wife] one half of the divisible portion."

Subsequently, in the dissolution judgment, the trial court awarded wife "an amount equal to fifty percent (50%) of the total amount of the member's disposable retired pay."

On appeal, husband asserts that the trial court erred when it awarded wife 50 percent of the total amount of husband's military retirement benefits—specifically, husband contends that it was error to award wife any portion of his military retirement benefits that had accrued before the marriage. Husband makes two arguments in support of that contention. First, he argues that it was legal error to award wife a greater portion of the divisible military retirement benefits for the purpose of offsetting his nondivisible veterans' disability benefits, in violation of federal law.[1] Second,

---

[1] Husband contends that the award violated both 10 USC section 1408 (providing that courts may treat "disposable retired pay" as divisible property for purposes of state dissolution laws, where "disposable retired pay" does not include

husband argues that the trial court abused its discretion in making the award, because neither wife nor the court explained why awarding half of husband's retirement benefits that had accrued before the marriage would be "just and proper in all the circumstances." *See* ORS 107.105(1)(f) (when rendering a judgment of marital dissolution, a court may provide for "the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances").

Before reaching the merits of either argument, we must consider the question of preservation. Under ORAP 5.45(1), "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court *** provided that the appellate court may consider an error of law apparent on the record." Preservation rules "serve[] the salutary purpose of permitting the trial court to avoid making an error or to correct an error already made." *Peeples v. Lampert*, 345 Or 209, 222, 191 P3d 637 (2008). As the Supreme Court stated in *Charles v. Palomo*, 347 Or 695, 700, 227 P3d 737 (2010),

> "the determination whether a particular issue was preserved for appeal is a 'practical one'; it will depend on whether the policies behind the preservation requirement—judicial efficiency, full development of the record, and procedural fairness to the parties and the trial court—are met in an individual case. *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009). Therefore, we will review an issue advanced by a party on review as long as that party raised the issue below with enough particularity to assure that the trial court was able to 'identify its alleged error' so as to 'consider and correct the error immediately, if correction is warranted.' *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)."

---

amounts of retired pay that have been waived by a retiree in order to claim veterans' disability benefits) and 38 USC section 5301(a)(1) ("Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] shall not be assignable except to the extent specifically authorized by law ***."). *See also Mansell v. Mansell*, 490 US 581, 583, 588-95, 109 S Ct 2023, 104 L Ed 2d 675 (1989) (A state court may not "treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits.").

In this case, husband contends that he preserved his first assignment of error by stating, during his opening statement, that "[s]ixteen years of his career out of 24 were during the marriage" and by asking the court "to apply the coverture fraction to that in his retirement."[2] He also argued, during his closing statement, that "[t]here's nothing in this case that should go beyond the coverture fraction," and that he was "suggesting that [wife] receive the coverture fraction." In addition, husband submitted, as part of his proposed findings of fact and conclusions of law, a proposed division of the retirement benefits in which he would receive the entire portion of retirement benefits that had accrued before the marriage.

Because husband raises two distinct issues relating to his first assignment of error, we address each in turn. *See Lee v. Koehler*, 200 Or App 85, 91-92, 112 P3d 477 (2005) (considering separately whether two arguments in support of a single assignment of error were preserved). As noted, husband's first argument is that the court violated federal law when it awarded wife a greater portion of his divisible military retirement benefits as an offset to his nondivisible veterans' disability benefits. Although husband urged the trial court not to award wife any portion of his premarital retirement benefits, he did not argue that it was prohibited under federal law from dividing the premarital portion of husband's military retirement benefits as an offset to the nondivisible veterans' disability benefits.

Husband could have raised the issue during trial or after the trial court issued its first letter opinion, but he did

---

[2] When dividing a pension as property in a dissolution proceeding, courts typically apply the "time rule" to determine what portion of a pension should be considered a marital asset. *Cardona and Cardona*, 262 Or App 415, 417, 325 P3d 66 (2014). As the Supreme Court explained in *Richardson and Richardson*, 307 Or 370, 378-79, 769 P2d 179 (1989),

"[t]he time rule determines the portion of the employee spouse's benefits attributable to the pre-separation employment by multiplying the pension's actuarial present value at the time of trial by a fraction, the numerator of which is the years (or months) of service during which the spouses lived as a marital unit, the denominator of which is the total years (or months) of service."

It is this fraction that husband refers to as the "coverture fraction."

not do so. On appeal, husband contends that the explanation the court gave in its letter opinion

"makes clear what the court did was to simply shift 50% of husband's premarital military retirement benefits, approximately equivalent to 50% of his VA disability benefits, from husband's side of the ledger to wife's side. In so doing [the court] treated husband's VA disability benefits as marital property subject to division by offset in violation of federal law."

However, in the time after the first letter opinion had been issued, but before the court had entered a general judgment, husband did not bring the purported error to the court's attention. Had husband raised the issue at that time, the trial court would have had the opportunity to correct the purported error, if necessary. *See Fay and Fay*, 251 Or App 430, 436-37, 283 P3d 945 (2012) (issue unpreserved when husband did not raise it to the trial court and, to the extent that he might have contended that he was unaware that the trial court would do what it did, "the court's letter opinion made clear how it would treat the debt in the judgment" and he "could have objected thereafter but did not") (citing *McDougal v. Griffith*, 156 Or App 83, 86-87, 964 P2d 1135 (1998), *rev den*, 328 Or 330 (1999) (holding that a party's failure to alert the trial court, before entry of judgment, to a purported error in a letter opinion precludes appellate review of that error)). Thus, we do not reach the merits of husband's first argument.

In contrast, we conclude that husband did preserve his second argument, in which he asserts that the court abused its discretion when it awarded wife 50 percent of husband's military retirement benefits that had accrued before the marriage. By arguing at trial that "[t]here's nothing in this case that should go beyond the coverture fraction," husband adequately raised the issue of whether it was "just and proper" for the court to award wife any portion of his premarital military retirement benefits. Thus, we now consider the merits of husband's second argument.

A court in a dissolution proceeding may provide in the judgment for "the division or other disposition between the parties of the real or personal property, or both, of

either or both of the parties as may be just and proper in all the circumstances." ORS 107.105(1)(f). For purposes of property division, "[a] retirement plan or pension or an interest therein shall be considered as property." ORS 107.105(1)(f)(A). ORS 107.105(1)(f) "distinguishes between property brought into the marriage and property acquired during the marriage." *Fay*, 251 Or App at 437. A "party who acquired premarital property generally is entitled to receive the property in the marital-property division, unless other considerations make it just and proper to distribute it differently."[3] *Id.* at 437-38. Circumstances that should be considered include "the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable," including "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." *Kunze and Kunze*, 337 Or 122, 135-36, 92 P3d 100 (2004). As the Supreme Court explained in *Kunze*, "[t]he trial court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion," and that discretionary determination should not be disturbed unless "the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Id.* at 136.

As noted, husband argues that the trial court failed to identify a sufficient reason to award wife 50 percent of husband's premarital military retirement benefits. We disagree. As explained in its letter opinion, the trial court considered, as one of the circumstances in this case, that husband would receive "a military pension of $4634 together with a military disability pension of $1747," a "total pension benefit of $6381 per month." The court noted that, because there was a "limitation in dividing the pension" and that husband would receive a "$1747 non-taxable benefit," it was "just and proper under the circumstances to award [wife]

---

[3] Property acquired during the marriage is subject to a rebuttable presumption of equal contribution. ORS 107.105(1)(f)(C). Because the property at issue in this case was acquired before the marriage, that presumption does not apply.

one half of the divisible portion" of husband's divisible retirement benefits. "When a trial court makes a discretionary decision, the record must reflect a proper exercise of that discretion." *Olson and Olson*, 218 Or App 1, 15, 178 P3d 272 (2008). Furthermore, although a court's explanation of its decision "need not be lengthy or complex," it "must comport with the applicable legal framework and describe the basic reasons for the decision." *Id.* Here, the court gave an explanation for its decision and its reasoning does not suggest that the court "misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires."[4] *Kunze*, 337 Or at 136. Accordingly, we conclude that the trial court did not abuse its discretion by awarding wife 50 percent of husband's premarital military retirement benefits.

## SPOUSAL MAINTENANCE SUPPORT

In his second assignment of error, husband asserts that the court erred when it awarded wife $1,000 per month as spousal maintenance support, for an indefinite period of time. He makes three arguments in support of that assertion; we reject two of the three arguments without discussion and write only to address husband's argument that the court abused its discretion when it refused to consider, as part of its determination of spousal maintenance support, husband's written agreement to contribute $3,000 per year to college funds for the parties' sons, and to pay for all of their future college expenses.

A court in a dissolution proceeding may provide in the judgment for "spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both." ORS 107.105(1)(d). As relevant here, the court may order "[s]pousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period." ORS 107.105(1)(d)(C).

Generally, spousal maintenance support "allows one financially able spouse to contribute to the support of

---

[4] To the extent that husband suggests that the court's reasoning was not "just and proper" in light of federal law, as discussed above, that argument is a distinct issue that was not preserved for our review.

the other, depending on the financial needs and resources of each party." *Abrams and Abrams*, 243 Or App 203, 207, 259 P3d 92, *rev den*, 350 Or 716 (2011). In a long-term marriage such as that of the parties in this case, "the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage," *id.* at 207, and "the parties should be separated on as equal a footing as possible," *id.* at 211-12. In determining the proper amount and duration of an award of spousal maintenance support, the factors to be considered by the court include the duration of the marriage; the age of the parties; the physical, mental, and emotional health of the parties; the standard of living established during the marriage; the parties' relative income and earning capacity; a party's training, employment skills, and work experience; the financial needs and resources of each party; the tax consequences to each party; a party's custodial and child support responsibilities; and any other factors that the court deems just and equitable. ORS 107.105(1)(d)(C)(i)-(xi).

In reviewing a spousal support award, including an award of spousal maintenance support, for abuse of discretion, "[w]e will not disturb the trial court's discretionary determination unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105." *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012) (citing *Kunze*, 337 Or at 136). In other words, "the trial court's award will be upheld if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is 'just and equitable' represents a choice among legally correct alternatives." *Id.* The trial court's findings are reviewed for evidence in the record. *Id.* (citing *Porter*, 245 Or App at 182).

In this case, the court explained its award of spousal maintenance support in its first letter opinion:

"The parties are 44 and 50 respectively. Each is in good health. The limited evidence in the record indicates they lived within their means, incurring limited debt. The discussion above which supports the award of Transitional Support is relevant to the court's determination of Spousal Maintenance Support in this case. The parties have and will continue to have disparate earning capacities. The

court did not award Spousal Compensatory Support in large measure because of the modification limitations provided by ORS 107.135(3)(a). As discussed, [husband] obtained his post-retirement positions in part because of his military career experiences. The parties began to enjoy the fruits of his labor prior to their separation. It is just and equitable that [wife] share in those benefits in the future. The court awards Spousal Maintenance Support in the amount of $1000 per month for an indefinite period commencing January 1, 2013."

During trial, husband testified that he had agreed in the parties' mediated agreement "to pay $3,000, total, a year" for his sons' college education and that "[i]n addition to that [he] would pay all the other costs as well." During closing argument, husband told the court that "it should be noted that [husband] is taking on the responsibility for his sons' education, including college tuition, room and board." Husband's agreement to contribute $3,000 per year into "a designated higher education fund" and to pay for future college expenses was listed in the mediated agreement under the heading "Higher Education Planning."

As noted, after the court issued its first letter opinion, husband filed a motion to reopen the record and for clarification, in which husband asked the trial court, among other things, to clarify whether it had considered the fact that husband had agreed to pay $3,000 into an account every year for the parties' sons' future college expenses. In its second opinion letter, the court explained that it had not considered that $3,000 annual payment, stating:

"The court did not consider the annual college funding contained in the parenting plan. The court cannot require a party to create an educational trust or fund. [*Wiebe and Wiebe*, 113 Or App 535, 537-38, 833 P2d 333 (1992)]. The parties agreed to the educational fund. The court was not asked to consider [husband's] contribution to the fund in considering the issues otherwise presented for the court's consideration."

On appeal, husband argues that "[p]aying for all college expenses is a 'child support responsibility,' or certainly another factor to be considered" when awarding spousal maintenance support, and that "[i]n exercising its

discretion, the court was required to consider that husband was obligated to pay all the college expenses." *See* ORS 107.105(1)(d)(C)(x), (xi) (listing, as factors to be considered, "[a] party's custodial and child support responsibilities" and "[a]ny other factors the court deems just and equitable"). Wife responds that the court had discretion to consider the $3,000 yearly contribution to the college funds, and that it did not abuse its discretion in deciding not to consider that contribution as a factor when awarding spousal maintenance support. She adds that the additional amount that husband might be required to pay for college expenses in the future are unknown and that the court properly declined to consider the "hypothetical costs of college" in making its award.

We note that husband did not submit any evidence to the trial court regarding how much husband will be expected to pay for his sons' future college expenses, other than the $3,000 per year that he will contribute to "a designated higher education fund." And, as wife correctly points out, any estimate as to the additional future college expenses of his children would be merely speculative. Thus, the court did not abuse its discretion by refusing to consider the additional future college expenses as a factor in determining whether to award wife spousal maintenance.

However, regarding husband's commitment to contribute $3,000 per year to a higher education fund, we conclude that the court should have considered that commitment as a factor affecting husband's "financial needs and resources," ORS 107.105(1)(d)(C)(viii), because that money will no longer be available as a financial "resource" for husband. Because the court did not consider that commitment to contribute $3,000 per year as a factor affecting its decision to award spousal maintenance support, we reverse and remand for the trial court to reconsider the spousal maintenance support award.

## LIFE INSURANCE

Finally, we turn to husband's fourth assignment of error, in which he argues that the court erred when it ordered him to maintain an insurance policy, naming wife as beneficiary, for at least $750,000 as long as husband is

required to pay spousal support, and then at least $250,000 for the remainder of his life. Husband argues that "[t]he $500,000 to insure spousal support is excessive, and should be stepped down over time to prevent wife receiving a windfall," and that the amount of insurance that the court ordered has "no rational relationship to the amount being insured."

In its first letter opinion, the court explained:

"Survivor Benefit [Plan] (SBP) is an insurance enabling the military retiree to insure a survivorship benefit for his or her spouse. The insurance is expensive and the parties agree that it would be more economical for [husband] to provide life insurance from an independent source. He proposes a policy of $250,000 for 10 years. [Wife] seeks coverage in the amount of $750,000.

"Life insurance is necessary to provide income to replace both the retirement benefits being awarded to [wife] as well as spousal support should [husband] die. There is no evidence as to the amount necessary to be invested to provide a stream of income sufficient to replace those income resources. During the initial five year period during which support is due [wife] will receive total retirement and spousal support benefits of approximately $80,000 per year.

"Thereafter, she will be receiving approximately $38,000 annually. [Husband] shall provide insurance in the amount of $750,000 so long as he has a spousal support obligation. Thereafter he shall maintain a life insurance policy in the amount of $250,000 designating [wife] as the primary beneficiary. If [wife] predeceases [husband], he may terminate the insurance or designate an alternative beneficiary."[5]

---

[5] ORS 107.820(2) provides:

"If the party ordered to pay support or a share of a pension or retirement plan has no life insurance policy naming as beneficiary the party ordered to receive either support or a share of a pension or retirement plan, or if an existing policy is inadequate to cover the obligation, the court in a judgment may order that the party ordered to pay shall purchase a life insurance policy naming as beneficiary the party ordered to receive the support or a share of a pension or retirement plan and that the obligated party shall pay premiums on the policy and keep the policy in force until the obligation ends. The obligated spouse has the option of obtaining a nonreducing term life insurance policy or any other type of policy in lieu of using existing policies."

ORS 107.820 was amended in 2013, but that amendment does not affect the provision at issue here; therefore, we refer to the current version of the statute.

In husband's motion to reopen and supplement the record and for clarification, he raised the issue of whether a 20-year term policy would satisfy the life insurance requirement, even though the court's letter opinion "seems to intimate the insurance would be indefinite," and whether the amount of required life insurance should be reduced as husband paid off his support obligation, because "[o]therwise it could be a wind fall for [wife], if at the end of the transition support, [husband] were to die, [wife] would be paid doubly." At a hearing on the motion, the court told husband that "there was absolutely nothing in the record by which [it could] give any direction about a calculation," and that it could not, "based on what was presented, give [the parties] any guidance beyond the directive that there has to be insurance."

However, the court denied husband's motion to reopen and supplement the record and issued a judgment that provided, in part:

> "[Husband] shall maintain an insurance policy insuring his life in an amount not less than $750,000.00, naming [wife] as the primary beneficiary. The obligation to maintain insurance in the amount of $750,000.00 shall continue as long as [husband] is required to pay spousal support as decreed by the Court or an arrearage exists for accrued but unpaid support. At such time as [husband] no longer has a spousal support obligation to [wife] and no arrearage exists, [husband], for the remainder of his life, shall maintain an insurance policy insuring his life in an amount not less than $250,000.00, naming [wife] as the primary beneficiary. [Husband] shall maintain the life insurance policy as set forth above in lieu of the [Survivor Benefit Plan] related to military retirement."

As noted above, the trial court's findings are reviewed for evidence in the record. *Berg*, 250 Or App at 2. At issue in this case is whether there is evidence to support the court's implicit finding that the amount of life insurance adequate "to cover the obligation[s]," ORS 107.820(2), was $750,000 as long as husband is required to pay spousal support, and then $250,000 for the remainder of his life. *See also* ORS 107.810 ("It is the policy of the State of Oregon to encourage persons obligated to support other persons as the

result of a dissolution or annulment of marriage or as the result of a legal separation to obtain or to cooperate in the obtaining of life insurance adequate to provide for the continued support of those persons in the event of the obligor's death."). The court offered no explanation of how it chose the amount of life insurance that husband was ordered to maintain, or why it denied husband's request to reduce the required amount as he paid his obligations, and nothing in the record provides an evidentiary basis for those decisions.[6] Because we are reversing and remanding for reconsideration the award of spousal maintenance support to wife, on remand, the court will have the opportunity to also reconsider and articulate its decision regarding the amount of life insurance that would be adequate to "cover [husband's] obligation[s]," ORS 107.820(2), as to "provide for the continued support of [wife] in the event of [husband's] death," ORS 107.810.

Portions of the judgment relating to spousal maintenance support and life insurance reversed and remanded for reconsideration; otherwise affirmed.

---

[6] Indeed, the trial court awarded the amount of life insurance that wife requested in her trial memorandum even though it had not awarded her the full amounts of property and spousal support that she had requested. Moreover, as wife expressed in her trial memorandum, her request for that amount of life insurance was "to secure [husband's] child and spousal support obligation, and her share of the military retirement [benefits]"; in contrast, the court's letter opinion indicates that it was ordering life insurance to secure wife's interest in her share of the military retirement benefits and spousal support only.