ORTEGA, P.J.
*718 Wife appeals a general judgment of dissolution and a supplemental judgment awarding spousal support, asserting five assignments of error. The primary disputes on appeal concern the spousal support and life insurance awards. We reject wife's other three assignments of error without further discussion. We conclude that the trial court failed to make sufficient findings to support its spousal support award and its decision not to require husband to purchase life insurance, *38 leaving us unable to determine whether those determinations were "just and equitable" under ORS 107.105(1)(d). Accordingly, we reverse and remand for the trial court to make the appropriate findings and to reconsider the spousal support and life insurance awards, and otherwise affirm.
Wife requests de novo review; however, because this is not an exceptional case, we decline to exercise our discretion to apply such review. See ORS 19.415(3)(b) (stating that we have discretion to apply de novo review in equitable actions); ORAP 5.40(8)(c) (stating that we will exercise that discretion only in exceptional cases). Accordingly, because we decline to review the facts de novo , we are bound by a trial court's findings of historical fact if there is any evidence in the record to support them. Berg and Berg , 250 Or App 1, 2, 279 P.3d 286 (2012). "[T]he trial court's award will be upheld if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is 'just and equitable' represents a choice among legally correct alternatives." Id.
Wife sought an award of $ 2,000 per month in indefinite spousal support and a requirement for husband to maintain $ 300,000 in life insurance naming wife as the beneficiary for as long as he had an obligation to pay spousal support. The court awarded wife $ 1,050 per month in transitional support for 12 years and made no life insurance award. Over the course of the proceedings, the court made the following findings relevant to the issue of spousal support:
"[Wife] is 47 years of age and husband is 48 years of age. Both of the parties are in apparent good health with no health problems sufficient to keep them from being fully *719 and gainfully employed. The parties were married in 1984 when she was 19 and he was 21. She did not graduate from high school. The parties have two adult children. [Wife] has been a homemaker[1] with some employment, usually at unskilled labor jobs. [Wife] has not had significant employment in a number of years and this Court finds she is underemployed. Husband has been steadily employed since the time of the marriage now working for Ford Motor Company for the last 22 years as a warehouse supervisor."
"The Court would indicate that, as stated in the original letter, this Court believes [wife] is underemployed. She has made no significant effort to find employment or to otherwise offset the parties' debt during the entire time of this dissolution of marriage case."
"[Husband]'s spousal support was and always has been transitional support and is NOT maintenance support."[2 ]
"The Court's intention was [husband] would pay support until his age 60 to allow him to retire shortly thereafter and no longer be paying spousal support. * * * [He] should be paying transitional support to [wife] to allow her the opportunity to develop some income-generating skills of her own and to transition to that situation over a long period of time."
The court found the following on the issue of life insurance:
"[Wife] has asked for a $ 300,000.00 life insurance policy to guarantee the payment of spousal support to her from [husband], but has not provided the Court with the cost of that policy, or any information except a number. * * *. Given the significant debt of the parties, this Court declines * * * to require [husband] to provide life insurance, in any amount, without further information. [Wife] is invited to provide that information to the Court * * *."
On appeal, wife argues that the trial court's spousal support award was not "just and equitable" as required by ORS 107.105(1)(d), given the length of the marriage and *720 the disparity in the parties' incomes and earning capacities. She also challenges *39 the court's failure to require husband to secure his spousal support obligation with a life insurance policy.
We review for abuse of discretion the trial court's conclusions regarding spousal support and life insurance awards and will not disturb a trial court's determination unless the court misapplied the statutory and equitable considerations required by the statute permitting these awards. Mitchell and Mitchell , 271 Or App 800, 811, 353 P.3d 28 (2015). The general rule is that the amount of a support award is not justified if it is "outside" the "range of reasonableness by a significant enough margin so as not to be just and equitable in the totality of pertinent circumstances." Cullen and Cullen , 223 Or App 183, 194, 194 P.3d 866 (2008) (citation and internal quotation marks omitted).
A court in a dissolution proceeding may order "spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both." ORS 107.105(1)(d). As part of a spousal support determination, a court "shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision." ORS 107.105(1)(d) (emphasis added).
Spousal maintenance support is one category of spousal support, and its purpose is to "allow[ ] one financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party." Abrams and Abrams , 243 Or App 203, 207, 259 P.3d 92, rev den , 350 Or. 716, 260 P.3d 493 (2011). In long-term marriages, like the one here, "the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage." Id. ; see also Snyder and Snyder , 102 Or App 41, 44-45, 792 P.2d 478 (1990) ("[I]n marriages of long duration, where the parties have disparate earning capacities, permanent spousal support is necessary to avoid an overly disproportionate impact on the disadvantaged spouse."). The court may award maintenance support "for a specified or an indefinite period." ORS 107.105(1)(d)(C). In determining whether to *721 award maintenance support, the factors to be considered by the court include the duration of the marriage, the age of the parties, the health of the parties, the standard of living established during the marriage, the relative income and earning capacity of the parties, a party's training and employment skills, a party's work experience, the financial needs and resources of each party, the tax consequences to each party, a party's custodial and child support responsibilities, and any other factors the court deems just and equitable. Id.
Here, the court failed to explain or make a record of its reasoning for denying maintenance support. See Olson and Olson , 218 Or App 1, 15, 178 P.3d 272 (2008) (explaining that a trial court must provide some explanation reflecting a proper exercise of its discretion and that the explanation "must comport with the applicable legal framework and describe the basic reasons for the decision"). Indeed, the only explanation the court offered regarding maintenance support is that the award was "NOT maintenance support." Because the court failed to make a record showing that it properly exercised its discretion, the court erred as a matter of law. See id .
Moreover, the court failed to properly consider all of the relevant factors in its decision to deny maintenance support. See Abrams , 243 Or App at 208, 259 P.3d 92 ("In determining the amount and duration of support, the court must consider the factors outlined in the statute * * *."). The court noted the age, health, and employment history of the parties and the duration of the marriage and also found that wife is "underemployed" and "has made no significant effort to find employment." However, significantly, the court failed to consider the standard of living established during the marriage, the relative income and earning capacity of the parties, the financial needs of the parties, or any other factors the court deemed just and equitable. See ORS 107.105(1)(d)(C)(iv), (v), (viii), (xi). The purpose of maintenance support is to "provide a standard of living to both spouses that is roughly comparable to the one enjoyed during *40 the marriage." Abrams , 243 Or App at 207, 259 P.3d 92. Therefore, the very factors that the court failed to consider in this case are the factors that may be the most fundamental in a court's assessment of whether to *722 award a party spousal maintenance support. Here, neither party disputes that a disparity exists between husband's and wife's present incomes and future earning capacities. Husband has a steady job. Wife's limited career advancement, level of education, and minimal work experience were occasioned by her extended absence from the workforce during the marriage so that she could stay at home to raise the children. Therefore, we reverse and remand for the trial court to reconsider all of the relevant factors in determining whether to award spousal maintenance support. See Mitchell , 271 Or App at 813, 353 P.3d 28 (reversing and remanding to reconsider the spousal maintenance support award after the trial court erred in failing to consider the financial needs and resources of each party).
Transitional spousal support is another category of spousal support, and it "is typically awarded when one spouse has been out of the workforce for an extended period of time and needs education or on-the-job training to prepare for reentry into the job market." Stuart and Ely , 259 Or App 175, 180, 313 P.3d 317 (2013) (citation and internal quotation marks omitted). The factors the court should consider in determining whether to award transitional support include the duration of the marriage, a party's training and employment skills, a party's work experience, the financial needs and resources of each party, the tax consequences to each party, a party's custodial and child support responsibilities, and any other factors the court deems just and equitable. ORS 107.105(1)(d)(A).
Here, the court's findings are not sufficient to support its decision to award transitional support in the amount of $ 1,050 per month for 12 years. The court's sole basis to support its decision regarding the amount and duration of transitional support was "to allow [husband] to retire shortly thereafter and no longer * * * pay[ ] spousal support" and "to allow [wife] the opportunity to develop some income-generating skills of her own and to transition to that situation over a long period of time." However, there is no evidence of when husband will actually retire.[3] It is *723 inappropriate to base an award of transitional spousal support for "a period of time that is defined by a contingency the occurrence of which is a matter of mere speculation." Harris and Harris , 142 Or App 427, 431, 921 P.2d 1329 (1996). Retirement is an example of such a contingency. See id. at 431-32, 921 P.2d 1329 (explaining that the duration of a spousal support award cannot be tied to obligor spouse's eventual retirement in the absence of evidence regarding when retirement will occur and what the financial consequence of retirement will be); McDonough and McDonough , 141 Or App 116, 120-21, 917 P.2d 36 (1996) (same); see also Gagnepain and Gagnepain , 113 Or App 56, 59, 831 P.2d 67 (1992) (deciding that terminating spousal support automatically upon retirement was improper because "there was no evidence that husband plans to retire immediately or any indication of when he does plan to retire"). While we first explained this principle in cases where we exercised then-mandatory de novo review,[4] the principle continues to apply under the current discretionary standard. See DeAngeles and DeAngeles , 273 Or App 88, 96, 359 P.3d 371 (2015) (citing Harris , 142 Or App at 431, 921 P.2d 1329, as "our case law concerning the efficacy of basing the duration of a spousal support award on a speculative contingency"). Therefore, the court's decision was error.
Additionally, nothing in the record provides an evidentiary basis for a nexus between the duration of transitional support ordered (12 years) and the two and a half years that wife testified it will take her to retrain. We therefore reverse and remand for the trial court to consider the appropriate *41 factors and make an appropriate record, in determining transitional support.
We turn to wife's challenge to the court's failure to order husband to carry life insurance naming wife as beneficiary until husband's spousal support obligation is fulfilled.[5]
*724 As with a spousal support award, the court must explain its findings for awards of life insurance. See Mitchell , 271 Or App at 816, 353 P.3d 28 (reversing and remanding for reconsideration of the portion of the judgment relating to spousal maintenance support and life insurance where "[t]he court offered no explanation of how it chose the amount of life insurance that husband was ordered to maintain, or why it denied husband's request to reduce the required amount as he paid his obligations, and nothing in the record provide[d] an evidentiary basis for those decisions"). Further, and also like support awards, the court's findings must have a basis in the law. See Justice and Crum , 265 Or App 635, 642, 337 P.3d 840 (2014) (remanding for reconsideration a transitional support award where the trial court's explanation for denying the award was that the request lacked a "specific plan" where we could find no statutory basis and the court cited no authority for the proposition). In the present case, the only explanation the trial court provided for not ordering husband to purchase a life insurance policy was that wife did not provide the court with the cost of the policy or "any information except a number" and the parties' "significant debt." However, we are not aware of, and the court did not supply any, statutory authority to deny life insurance on those bases. Furthermore, we do not understand how the parties' debt (which the court divided between them) justifies not securing a spousal support obligation. See ORS 107.810 ("It is the policy of the State of Oregon to encourage persons obligated to support other persons as the result of a dissolution * * * to obtain or to cooperate in the obtaining of life insurance adequate to provide for the continued support of those persons in the event of the obligor's death."). We therefore remand to the trial court to reconsider and articulate its findings regarding the adequate amount of life insurance.
Reversed and remanded for reconsideration of spousal support and life insurance awards; otherwise affirmed.

The uncontested facts indicate that wife stayed home to raise their children by the parties' mutual agreement.

There were several letter opinions and supplemental judgments entered in this case. One judgment included maintenance support. A subsequent judgment excluded maintenance support, providing only the explanation indicated in this quotation.

The record indicates that if husband retains his current job, he will be eligible to retire in 12 years.

Our standard of review was controlled by a prior version of ORS 19.415(3), which required de novo review of domestic relations cases.

ORS 107.820(2) provides:
"If the party ordered to pay support or a share of a pension or retirement plan has no life insurance policy naming as beneficiary the party ordered to receive either support or a share of a pension or retirement plan, or if an existing policy is inadequate to cover the obligation, the court in a judgment may order that the party ordered to pay shall purchase a life insurance policy naming as beneficiary the party ordered to receive the support or a share of a pension or retirement plan and that the obligated party shall pay premiums on the policy and keep the policy in force until the obligation ends. The obligated spouse has the option of obtaining a nonreducing term life insurance policy or any other type of policy in lieu of using existing policies."